Spear, J.
The questions arising upon the record are: (1.) Whether shares of stock held by citizens of Ohio in a foreign corporation, which has in this state substantial property upon which it pays taxes, are taxable here,• and, (2.) whether shares so held of stock of a consolidated railroad company are taxable here, where the company is formed by consolidation of an Ohio company with companies of other states, and has substantial property in the state on which it pays taxes, the larger portion of its property being without the state.
The claim against their taxability is substantially that (1) the legislature has not authorized such a tax — or, in other words, there is no law for it; (2) it has authorized holders of such shares to omit them from their tax returns; (3) the tax laws have been thus construed from their inception by the taxing officers and tax-payers; and (4) the levying of taxes upon such shares would impose unequal burdens, and would result in double taxation.
It is believed that as to the telegraph stock at least, previous decisions of this court have practically determined the controversy, if indeed, they have not disposed of all the questions in the cases. We will now refer to those decisions in con *158 nection with the constitutional and statutory provisions which affect the questions.
Section 2 of article 12 of the constitution provides that- “ laws shall be passed, taxing by a uniform, rule, all moneys, credits, investments in bonds, stocks, joint stock companies,, or otherwise; and also all real and personal property, according to its true value in money,” and that “ personal property, to an amount not exceeding in value $200, for each individual, may, by general laws, be exempted from taxation.”
Section one of the act of April 5, 1859, (S. & C-, 1438,) entitled “ an act for the assessment and taxation of all property in this state, and for levying taxes thereon according to its true value in money,” (which act is now codified in Revised-Statutes, as section 2730, and following,) is as follows: “ That all property, whether real or personal, in this state, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, of persons residing therein; the property of corporations, now existing or hereafter created, and the property of all banks or banking companies, now existing or hereafter created, and of all bankers, except such as is hereinafter expressly exempted, shall be subject to taxation; and such property, moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, or the value thereof, shall be entered on the list of taxable property, for that purpose, in the manner prescribed by this act.”
Section 2 defines the term u investments in stocks” in these words:
“ The term ‘ investments in stocks/. wherever used in this act, shall be held to mean and include all moneys invested in the public stocks of this or any other state, or of the United States, or any association, corporation, joint stock company or otherwise, the stock or capital of which is or may be divided into shares, which are transferable by each owner, without the consent of the other partners or stockholders, for the taxation of which no special provision is made by this act, held by persons residing in this state, either for themselves, or as guardians, trustees or agents.”
*159 The 9th subdivision of section 3, provides that “ no person shall be required to include in his statement as a part of the personal property, moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, which he is required to list, any share or portion of the capital or other property of any company or corporation which is required to list or return its capital and property for taxation in this state.”
Section 59 of the act provides that “ no person shall be required to list for taxation any certificate of the capital stock of any company the capital stock of which is taxed in the name of said company.”
It is clear that the purpose of section one is to tax all investments in stocks held within the state. This we are bound to assume, for every presumption is in favor of that construction of the law which gives eifect to the- requirement of the section of the constitution referred to, and we are forced to the conclusion that the general assembly, in enacting this law, intended, so far as the complex nature of human business affairs should make it practicable, to include within the taxing provisions all property within the state, and not to exceed in its exemptions the limit prescribed, as to persons, of “ personal property not exceeding in value two hundred dollars for each individual.” And, further, that where an exception or exemption is claimed, the intention of the general assembly to except must be expressed in clear and unambiguous terms. “The exemption must be shown indubitably to exist. At the outset every presumption is -against it. A well-founded doubt is fatal to the claim. It is only where the terms of the concession are too explicit to admit fairly of any other construction that the proposition can be supported.” Railway Co. v. Supervisors, 93 U. S. 595 ; Tucker v. Fergueson, 22 Wall. 527. Intent to confer immunity from taxation must be clear beyond a reasonable doubt, for, as in case of a claim of grant, nothing can be taken against the state by presumption or inference. Delaware Railroad Tax, 18 Wall. 206; Kirtland v. Hotchkiss, 42 Conn. 426 ; Cincinnati College v. State, 19 Ohio, 110 ; Railroad v. Dennis, 116 U. S. 665; Farrington v. Tennessee, 95 U. S. 679; Railroad v. Guffey, 120 U. S. 569; Rail *160 road v. City of Saco, 60 Me. 196 ; Lima v. Cemetery Association, 42 Ohio St. 128. It seems equally clear that the legislative purpose was to tax all the property of corporations as well as all investments in stocks.
The stock in question comes within the description contained in sections one and two above quoted. It follows that, if this act be valid, the stocks sought to be taxed here are properly taxable unless it is made clearly to appear that they ■are, in whole or in part, within the spirit and letter of the exceptions. That the act is valid, and that stocks held here in foreign corporations may be taxed, was distinctly held in Worthington v. Sebastian, 25 Ohio St. 1, and in other cases.
It may be assumed that “ capital stock ” and “ capital and property” mean practically the same thing. Primarily the “ capital stock ” is the money paid in by the stockholders in compliance with the terms of their subscriptions. It soon, however, takes the form of real estate, or personal property, ■or both, including machinery, buildings, credits, rights in action, etc. So that it may _ here be taken to mean personal property, and such real estate as may be necessary to the daily ■operations of'the company, and its moneys and credits. The •capital is thus represented by the property in which it has been invested.
The contention in support of exemption is, that in using the language “ any company or corporation which is required to list or return its capital and property for taxation in this .state,” and the expression “ any company, the capital stock of which is taxed in the name of the company,” the general assembly had in mind such capital and property, and such only, as is, or might be, within the state, and not all the capital or property of the corporation. So that, though the corporation be a foreign one, if any of its property is within the state and listed here for taxation, that fact alone authorizes the owner of shares to omit them from his return. Hence, as this company lists that part of its property which is in Ohio, the condition of exemption is fully met, and the shares exempt; that to require the shares of stock to be listed by the stockholders would result in double taxation. The facts *161 show that about one-sixteenth of its line is in Óhio. A very small part is returned for taxation here, and taxes are paid upon that small portion. The great bulk is without the state and beyond its reach. It falls far short of meeting the letter and spirit of the words, “its capital and property.” The language is not “ to return its capital and property within the state for taxation,” but is to “ return its capital and property for taxation in this state.” The “ capital and property ” is not a small part of it. We cannot say that so much of the valuation as has been assessed in Ohio in the name of the company may be deducted from the value of the shares, and the balance taxed. We must take the statute as we find it. We cannot interpolate words and make the clause read as though written “ which is required to list or return a part of its capital and property,” or the other read as though written “ any portion of the capital stock of which is taxed in the name of the company.” Had the general assembly intended this meaning, they wduld have used apt words to express it.
As to the matter of double taxation, we think the objection apparent rather than real. Whether shares of the stockholders, and the capital of the company, constitute the same, or different species of property, has been the subject of much-discussion in a great number of cases. But the weight of authority we believe to be in favor of the proposition that shares of stock constitute property distinct from the capital or property of the company. This court, in cases elsewhere cited, has recognized such distinction. Our statute (Rev. Stats., § 3255), declares them to be personal property. The capital or property of the company may be largely real estate, while the shares are, in their nature, personalty. They can have no locality, and must, therefore, of necessity, follow the person of the owner, unless other provision is made by statute. The corporation is the legal owner of all the property of the company, real and personal, and within the powers conferred upon it by its charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. The interest of the shareholder entitles *162 him to participate in the net profits in proportion to the number of his shares; to have a voice in the selection of officers to manage the business of the.company in like proportion, and, upon its dissolution, the right to his proportion of the property of the corporation that may remain after payment of its debts. This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to-him; is under his sole control, so that he may sell or hypothecate it. He is entitled, from net earnings of the corporation, to dividends upon his stock, and the value of the stock depends largely upon its capacity for earning dividends. The shares of stock may be worth much more than the property of the corporation; that is, the franchise may be very valuable while the visible capital may be of but little value, and dividends may be greatly out of proportion to the tangible property, as frequently occurs in regard to street railroads, gas companies, electric light companies, etc. Farrington v. Tennessee, supra, 686, 687 ; Watson v. Spratley, 10 Exch. 236 ; People v. Commissioners, 4 Wall. 244; Union Bank v. State, 9 Yerger, 490; Cook v. Burlington, 59 Iowa, 251. It follows from this tha*, although dhe shareholder may be affected as regards the extent of his dividends by taxation of the property of the corporation, yet a tax on the shares is not a tax on the capital of the company,, and e converso, a tax on the capital is not a tax on the shares held by the stockholders. Taxation of the capital and property of the corporation, though it be accepted by the state as an equivalent for, is not the same as, a tax on the shares.
We have many subjects of taxation which approach more nearly to double taxation than that of taxing capital stock and individual shares of stock in addition. Take the familiar instance of the taxation of mortgages. The owner of real estate, a farm for instance, mortgages it for money to invest in cattle to stock it. He pays taxes on the land without deduction, and on the live stock, and the lender of the money pays taxes on the mortgage. By reason of this latter fact the lender demands more interest, which the farmer pays. He thus pays taxes on his farm, on his stock the result of the borrowed money, and *163 indirectly, the whole, or a considerable portion of, the tax on the mortgage. And yet, reduced to the last analysis, this is not regarded as double taxation, because value is taxed each time. At all events, it is unquestionably the legal rule in Ohio. It is not impossible that a large portion of the stock of this corporation may be held by residents of this state. In such case, if the claim of the defendant should prevail, large amounts within the state, represented by these shares, would escape taxation, while the shares of stock held by our citizens in foreign corporations which happen not to have property within the state, would bear their full burden. Such a rule would not tend to uniformity or equality of taxation. And, inasmuch as the tax on the property of the corporation within the state is not a tax on the shares, and is not by the statute in terms made an equivalent, and inasmuch as the manifest purpose of the legislature was to reach all “ investments in stocks ” in some form, we think a rational construction of the statute can lead to no other conclusion than that the telegraph stock cannot come within the purview of the exemption clauses.
The case of Bradley v. Bauder, 36 Ohio St. 28, is in point, and, as we think, so completely covers these questions that but little is left for us but to apply the work of others. The syllabus is: “ By the provisions of the act of May 11, 1878, an owner, residing in Ohio, of shares of stock in a foreign corporation, is required to list the same for taxation, notwithstanding the cajhtal of the corporation is taxed in the state where the corporation is located.” The act of 1878, here referred to, embodies substantially the provisions of the act of 1859. Every question we have here, as to telegraph stock, was present there, though the wording of a paragraph in the statement of facts, on page 28, might lead to a contrary impression. An examination of the record shows that among the shares of stock, taxation of which was sought to be enjoined in that case, were shares of the Adams Express Company, averred in the petition to be, and well known to be, a foreign corporation having lines running through this state upon which it did business, and having property within the state upon which it paid taxes here. It was *164 urged by counsel for plaintiff in error, in his printed brief, that it was a company created by and located in the state of New York, and reasoned that the fact that it paid taxes in that state, and in this state upon its property employed in its business here, ought to exempt its shares. The case was determined upon a general demurrer to the petition which was sustained, and judgment without dissent, given for defendant. If as to either class of stock, taxation of which was sought to be enjoined, the court had been of opinion that it should be exempted, that conclusion would have been followed by the overruling of the demurrer. Necessarily, therefore, this question was passed upon. It is within the letter, and, as we think, the logic of both the syllabus and the opinion. That it isn't given importance in the opinion may be owing to a belief in the mind of the learned judge who reported the case that it was not of consequence. And it was not, if the principle announced in the case is correct. We believe it to be, and, in reaching the conclusion hereinbefore indicated as to the telegraph stock, we but follow the logic of the decision and judgment in this case.
To like effect is the holding of the Supreme Court of the United States in Sturges v. Carter, Treas., 114 U. S. 511. The plaintiff in that case, Carter, treasurer, the successor of Lee, brought suit in the Common Pleas of Richland county, to collect taxes on stock in the same telegraph company. Sturges removed the case to the Circuit Court of the United States, where it was tried before Judge Baxter. Judgment being rendered against the defendant, he sued out a writ of error to the Supreme Court, where, at the October term, 1884, by the unanimous opinion of the court, the judgment was affirmed. The syllabus is as follows: “The provision, section 59, Act of April 5, 1859, of Ohio, that 'no person shall be required to list for taxation any certificate of the capital stock of any company, the capital stock of which is taxed in the name of the company, does not apply to shares in a foreign corporation which pays taxes in Ohio only on the portion of its property which is situated there.”
With due deference to the contrary opinions of the learned *165 .counsel so vigoi ously expressed in argument in this case, we may be allowed to give our assent to the judgment of the Supreme Court upon the facts, and to express respect for the decision as authority.
As to the railway shares, it is further claimed that the language of section two of the act (heretofore quoted) defining the phrase “investments in stocks,” in terms excludes them from taxation here, and that'they are of the class which sections three and fifty-nine authorize the holder to omit. This, because the word “ which” in the clause “for taxation of which no special provision is made by this act” refers, not to “shares” but to the capital stock of the company, and, therefore, “investments in stocks” includes only stocks in corporations as to the taxing of the capital stock of which no special provision is made by law; that there is a special provision made by law for the taxing of railroad companies; hence the shares of stock of such companies in the hands of individuals are not taxable. Applying grammatical rules to this sentence, it would seem natural to refer the word “ which ” to its immediate antecedent “shares”; and this construction finds support by a consideration of the words following, viz.: “ held by persons residing in this state,” etc. Shares might be held by persons here; the capital stock could not be. However, we are not impressed with the prime importance of abstruse and ingenious distinctions in regard to the wording of section two. There may be apparent objections to any of the differing constructions sought to be given to this clause. But, however it be construed, we think the result is the same. If it be conceded that the word “ which ” should be referred back to the words “ the stock or capital,” then, taking that clause in connection with the portion of the ninth clause of section three, and the first clause of section 59, and construing the whole legislation in the light of the constitutional requirement before referred to and of the previous decisions of this court, the “ special provision ” must be one which relates to an Ohio corporation proper, one as to which, as in Jones v. Davis, 35 Ohio St. 474, the state had exercised, or might exercise, the right to tax the capital stock in the name of the company.
*166 Now the “special provision” for the taxation of railroads, is that provided by sections 2770 to 2776, Revised Statutes, and is, in substance, that the auditors of the counties through which the road passes meet annually as a board of appraisers and assessors and proceed to ascertain all the personal property, which includes road-bed, water and wood stations, and such other realty as is necessary to the daily running operations of the road, moneys and credits, and undivided profits of the company, and the actual value thereof in money. The board may require the president, secretary, treasurer, receiver, and principal accounting officer to produce a detailed statement, under oath, of all the items constituting such property, moneys, credits and their value, and may examine under oath such officer, and the books and papers of the road. The value of all such property is then apportioned by the board among the several counties, so that to each city, village, township and district shall be apportioned such part as shall equalize the relative value of the real estate, structures, and stationary persona] property, in proportion to the whole value of the same in the state, and the rolling stock is apportioned in the same proportion and in a similar manner. When any company has part of its road in this state and part without, the board is to take the value of the property, moneys and credits thus ascertained, and divide it in the proportion the length of such road in the state bears to the whole length, and determine the principal sum for the value of the road in the state accordingly, equalizing the relative value between counties, etc., as before indicated.
It will be seen at a glance that this scheme has for its object the ascertainment of the value, and the taxation according to that value, of the property of the road within the state only; the marshalling of the entire property and its valuation being simply an ingenious mode of ascertaining the amount and value of the property within the state, to be taxed. That which lies without is first included, because the proper equalization as to value can not be made without it, and then it is deducted. The result is the ascertainment for taxation of the proportion of value *167 properly taxable within the state. It works out for the railroad companies herein named, taxation of a little over ten per ■cent, of the value of the capital stock of The Cincinnati, Indianapolis, St. Louis & Chicago company, about twenty-one and one-half per cent, of the value of The Pittsburgh, Fort Wayne & Chicago company, and of The Lake Shore & Michigan Southern about twenty-five per cent. A “ special provision ” attended with such results can hardly be regarded as one which embraces taxation of capital and property of a company, nor one which furnishes an instance where the capital stock is taxed in'the name of the company.
As to The Lake Shore & Michigan Southern Railway Company, it is further insisted that it is not a foreign, but a domestic, corporation; and as it has returned and listed and paid taxes on its immense property lying within the state, in conformity with the statute, the shares iu the hands of stockholders cannot be taxed. The finding of facts does not in express terms declare that this company is organized in Ohio, but we understand the fact so to be. That is, it is an Ohio corporation in the same sense as are all consolidated railroad companies made up in part of an Ohio company. It does not, however, necessarily follow that-they are domestic corporations in all aspects and for all purposes. Such corporations derive ¿heir corporate existence and all their powers from domestic law. A consolidated railway company, composed of companies of this and other states, derives its corporate existence and rights from the laws of the respective states in which its line of railway is located, and is, therefore strictly speaking, an interstate corporation. It is not domesticated in one, but in several states. It is not the creature of one, but of all the states in which it, in part, exists, and has been enabled, by their respective statutes, to become a corporation for the ownership and management of an interstate line of railway. Such is the character of The Lake Shore & Michigan Southern Railway Company. It is a corporation of the states in which it is located, from Buffalo to Chicago. The consolidated company, when the agreement of consolidation is made and perfected, and the original or a copy filed with the secretary of state, is to *168 possess within this state all the rights, privileges and franchises, and be subject to all the restrictions, liabilities and duties of a railroad company. A copy of this agreement shall be received as evidence that such consolidation was authorized by the laws of the several states within which the companies were chartered. Such company must establish a principal office within the state, and suits may be brought against it in the courts of the state as against other companies. That portion of the road in this state, and all its real and personal property, shall be listed for taxation and taxed in the same manner as the road and property of other railroad companies in the state, and the rolling machinery is to be listed at- a valuation which will give such proportion of the value of the whole as the length of line in the state bears to the length of the whole line. But there is no requirement that it shall list its capital stock, nor, for taxation here, all its property; for that purpose it is to return only such as is within the state, the return of any that may be without being for the purpose of ascertaining the proportional value of that which is here. This, by the terms of the act under review, .was required of every foreign corporation, and therefore, it imposes upon such consolidated company no burden as to taxation beyond that imposed upon every foreign corporation having property within the state. Though it is required to have a principal office here, its general business may be done elsewhere. It may hold millions of credits without the state, and they are not taxed here. Not so, to the same extent at least, with a strictly domestic corporation. Its situs is here to all intents and purposes. If it owns credits, shares for instance in the 'stock of foreign corporations, (which is often the case, whether there be legal warrant for it or not,) it must list the same here as fully as the private citizen is required to do, and of course all visible property is taxed here. So that, it cannot be said that the power of taxation over a consolidated company is the same, or as extensive as, that over a strictly domestic company.
Again, by the act of consolidation, the shares of stock in the consolidating companies, held by the shareholders, are surrendered, and in their place are substituted shares in the *169 consolidated company. That which before was, in a sense, represented in the railroad and the other property in Ohio only, is now, in the same sense, represented in the entire railroad and property of the consolidated company. The old Ohio company has out no certificates of stock whatever; indeed, it has ceased to exist, for, on perfecting the agreement, “ the several corporations shall be deemed and taken to be one corporation.” That one is the new one. The old is abolished and its charter extinguished. The new one thus created, stands, in all respects, in the view of the law, as if the old companies had never existed. (Swayne, J., in Shields v. Ohio, 95 U. S. 324.) The present company, if treated as an Ohio company, has out no stock, and it is, therefore, not the stock of an Ohio company which is sought to be taxed. The Ohio stockholder, (if it may be said that he has any legal interest in the corporate property),.has no more interest in or control over the road and property in this state than in that lying in the other states, nor have the stockholders residing in the other states any less interest in the Ohio property of the corporation than in that lying without. Upon a dissolution of the corporation the stockholders in Ohio would not take .the property here or its proceeds, nor would it fall to the original stockholders in the old Ohio company, — -the Lake Shore company. On the contrary, all stockholders of the consolidated company, wherever residing, and by whatever company of the consolidation their original stock was issued, would be interested alike in the whole residuum, in proportion to their respective shares.
It'is thus made apparent, as it seems to us, that the question whether this railway stock held in Ohio is taxable here, is not to be answered in the negative merely because it is ascertained that the corporation was incorporated under the laws of Ohio. There still devolves upon the shareholder the burden of showing, clearly and without question, that the results following such organization bring the shares within the exemption, tax-ability being the rule, exemption the exception. Has this been done? We think not. It is true that the property of the corporation entered for taxation in Ohio is substantial in character, and that the amount paid by the company as taxes *170 ■on that property is large. But the greater portion of the company’s entire property, about three-fourths in value of it, lies without the state. And we are unable to perceive that the reasoning of the court in Sturges v. Carter, supra, and the logic of Bradley v. Bauder, supra, is not applicable to this stock as well as to that of the telegraph company. If, as in effect is held in the latter case, and directly held in the former, the exemption clause of section 59 does not apply to shares in a foreign corporation which pays taxes in this state only on the portion of its property which is situated here, and if, as we are constrained to conclude, the Lake Shore & Michigan Southern Eailroad Company, as to the matter of taxation, is essentially a foreign corporation, it is difficult to see why shares in that company, held by our citizens, are not taxable here. To hold them exempt would, we think, require, in effect, an overruling of those cases. The railway company is not, any more than is the telegraph company, required to return all, or substantially all, its property for taxation in this state. The finding of fact is that this corporation “has returned and listed its property in the state of Ohio for taxation, consisting of its line of railroad, road-bed, depots, station-houses, and the necessary real estate for the same, rolling-stock, and other property, of the value of $13,000,000,” while its capital stock is $50,000,000. In a word, the consolidated company does not fall within the description of the exemption clauses of the statute.
Marked stress is laid in argument, as supporting the contention of the insurance company, upon the case of Frazer et al. v. Seiburn et. al., 16 Ohio St. 615. A full analysis of this case would require much space, and it would not, it seems to us, prove profitable. The case construes the Act of Congress of 1861, authorizing the formation of national banks, and clauses of the taxing laws of Ohio under consideration in the cases at bar, and gives a rule for applying the qualifying clauses of the national bank act, and holds that the clause limiting taxation of shares in national banks to a rate not greater than that imposed upon shares in state banks, means that as the taxation of such shares is provided for under the state tax law by tax *171 ation upon the banks themselves, which have the right to deduct from their capital for taxation, real estate and government bonds held by them exempted by United States law, so, in assessing shares in national banks the same deduction shall be made. And where, under the state law imposing taxes upon shares in national banks, the tax is in excess of the rate imposed upon the banks of the state, the payment of such excess might be enjoined upon payment of a sum which would be a fair equivalent for the tax on the state banks.
With due respect to the claim of counsel, whose ingenious argument upon the point we have read with much interest, we cannot see that the holding noticeably aids his contention, or gives' a rule determining adversely the question of taxing shares in a foreign corporation. Because the law of the United States fixed a rule for the taxation, by a state, of shares in national banks located within such state, and that rule authorized exemptions in order to conform taxation of federal bank shares to the rule applied to shares in state banks, it does not follow that our statute should be so construed as to exempt shares in a foreign corporation, as to which there is no requirement of federal law whatever. In the bank case our court but bowed to the controlling authority oí the general government. It held the law in that case in obedience to that superior power, in the same breath expressing regret because of the necessity.
Nor does a reading of the opinion in the bank case impress us that the learned judge who wrote it anticipated that such a construction as is here claimed could be given to it. We quote from Welsh, J., on page 622. Speaking of our tax law, he says:
“ It provides for a tax against certain corporations and companies upon their capital, and for a tax against the shareholders, upon their stock, in those corporations and companies that are not so taxed upon their capital.
“ * * * The intention manifestly was to subject the Capital employed by these corporations and associations to a single taxation — some of them in one form, and some in another — and not to tax any of them twice. It is the unmistak *172 able intention manifested in our tax legislation for the last twenty years — the central idea of our system of general ad valorem taxation — to tax every person upon what he is worth. In a system like ours, where intangible as well as tangible property is taxed, some forms of double taxation are unavoidable; but the object should be — and such seems to have been the general aim of all our late legislation upon the subject — to avoid double taxation whenever it is practicable, and as nearly as may be, to tax all according to their actual wealth. That object is best attained in case of a corporation, or joint stock company, by taxing the stockholders — the persons who own its property, upon the full value of their shares therein, including, of course, their interest in the franchise or privilege, and in all tangible property owned by the company; and by taxing the corporation also upon the valúe of such tangible property. * * * This is the rule adopted by the act of congress in question, and it seems to us a just and fair rule. The act of 1865, by subjecting shareholders in the national banks to such a tax, places upon the owners of those banks, the shareholders therein, no more than their just proportion of the public burden of taxation; and we regret that any technical reasons, growing out of the taxation of the few remaining state banks, should stand in the way of its enforcement.”
This construction of the exemption feature of the act of 1859, confines the exception to home corporations, and clearly recognizes the distinction between the taxation of shares and the taxation of capital stock which we have sought to point out. This application of the exemption clauses is more fully expressed in the opinion of Boynton, J., in Bradley v. Bauder, supra, from which we quote the following: “ In view of these provisions, it is perfectly obvious that shares of stock in corporations, wherever located, owned by our citizens, are subject to taxation, except in cases falling within the operation of the proviso of section 13, unless the statute is open to constitutional objection. The proviso to the 13th section, exempting from taxation any share or shares of stock in any company, the capital stock of which is taxed in the name o f the company, is a substitute for the same provision found in *173 the first clause of section 59, of the act of 1859. It bad, in that act, as in the act of 1878, no reference to shares of stock in foreign companies.”
In the case of Jones v. Davis, supra, the question at issue was as to the taxability of shares in an elevator company, organized under the laws of this state, all of whose real and personal estate necessary for the daily conduct and operation of its business, together with moneys and credits, was listed by the company for taxation here, and the court held that the owner of shares of the capital stock of the company was not required to list his shares for taxation. So that, as to the owners of stock in home corporations, having their property all in this state, this case is authority warranting such owners to omit to list their shares. The decision does not determine whether any different result would have followed had the corporation possessed substantial property without the state. And this presents an inquiry much pressed in argument. A decision of the cases at bar does not make necessary a conclusive answer to it here, and it may not be possible to formulate a rule, or give a construction to the act, which will bring about perfect equality in all instances. Take, for example, the case of a corporation having in this state, and subject to its taxing laws, nearly all- its property, and only a small portion without; if the.shares are taxed because it is a foreign corporation, the result has the appearance of double taxation, while, in case of a corporation having in the state a trifle of its property, the greater portion being beyond the limits, and the shares held in this state are not taxed because it is a home corporation, apparently there is property in the state which escapes taxation. But these are extreme instances, and extreme cases do not prove satisfactory tests. However, while recognizing grounds for differences of opinion, and conceding that this construction is not, as to the phase of the subject, in all respects, satisfactory, as conclusion, we are disposed to be content with a construction of these exemption clauses which will be in accord with the opinion in the case last cited and with that indicated in the opinion in Bradley v. Bauder, supra, and treat them as applying to all corporations which are *174 strictly domestic, but to none others, and thus to exempt from taxation only “the shares of stock in corpoi’ations where the state had exercised the right to tax the capital stock in the name of the company.” This construction applies them to that class of corporations over which the state may have, as to their capital and property, as well as management, entire control. In this view, when the general assembly uses the words “ capital stock or property of any company or corporation which is required to list or return its capital and property for taxation in this state,” it refers to that class of corporations whose entire capital and property it is possible to require to be listed here. This is not possible of a railroad company made up by consolidation of an Ohio company with companies of other states. As to this feature it is as essentially foreign as is a strictly foreign Corporation holding property within the state. A construction which would result in the exemption of these shares, would, we think, be at war with the language of the statute, and would, besides, result, in many cases, in releasing from taxation large amounts of property held in the state, for which there would be no equivalent. Of course we do not overlook the fact that, under the rule suggested, some property owned by domestic corporations may escape taxation because of being without the state, and so beyond reach. This will be found true as to exceptional cases, but treating them as a class, their capital and property are all here.
The Tact that some property of domestic corporations would thus avoid taxation is urged as a reason for the release of the railway and telegraph shares here on the ground, that, if held, the rule would result in unequal taxation, and, it is further urged that to subject these shares to taxation would result in driving a large volume of capital from the state. The force of this argument is not perceptible. Whether the tendency of holding such shares taxable will be to drive capital from the state, or will, on the other hand, induce such holders to invest- in stocks of home corporations, we need not inquire, for the court’s duty is not to declare that to be law which it may think may prove advantageous to the people, but to declare the law as it finds it. Nor can the court be called upon *175 to equalize taxation. The shares in question are held subject-to taxation because, as we think, the law says they are so subject. Those of domestic corporations are held exempt because the law says they are to be excepted. If this works inequality, or if it tends to drive certain species of capital from the state, the remedy, if any, is with the law-making power, and not with the courts. Nor does the fact, if it be so, that other property escapes, necessarily render this tax invalid. Exchange Bank v. Hines, 3 Ohio St. 1; Wagoner v. Loomis, 37 Ohio St. 571. “It cannot be too distinctly borne in mind that, any possible system of tax legislation must inevitably produce unequal and unjust results in individual instances; and if inequality in result must defeat the general law, then taxation becomes impossible, and governments must fall back upon arbitrary exactions.” Cooley on Taxation, 221. It is probable that the lightening of the burden of taxation attracts the owners of property to locate, and draws foreign capital to the state. Referring again to the taxation of mortgages, it is plausibly urged by many, that if the tax on mortgages in. the hands of residents were abolished, capitalists having money to loan would be attracted here from other localities and the rate of interest would fall, thus giving our enterprising people the use of more capital and at a less rate of interest. If this be. conceded, should the courts therefore declare that mortgages, or notes secured by mortgages, given to residents of Ohio,, can, under our statutes, be exempted ?
Fear is expressed by counsel that great wrong and injustice will be done the stockholders, in these and similar corporations, by taxing their shares, because, they cannot know whether the corporation has listed all its property, and they should not be held accountable for its default. We think the fear unsubstantial. The stockholder need know, only that the corporation, under the rule applying the exemption to stock in home companies, is required to list. Where it is so required, presumably the capital stock of such company is taxed in the name of the company; and where such duty devolves upon the corporation, the taxing officers will, in case of default, follow the corporation, not the individual stockholder.
*176 It is insisted that railroad capitalists have been encouraged by the state to consolidate railroad companies, and having invested their money in such stocks under the belief that they were non-taxable, it would now work an injustice to assess a tax upon them. If, by agreeing to consolidation, any stockholders surrendered non-taxable stock, taking in exchange stocks which turn out to be subject to taxation, presumably they anticipated other advantages which would more than •compensate, and, without doubt, this anticipation has been realized in most instances. State v. Railroad Co., 66 Me. 488; Railroad Co. v. Maine, 96 U. S. 499.
The allegations in the petition of the insurance company as “to uniform construction” by the people and taxing officers, were, so far as competent for consideration by the court, matter of evidence, save where they might be taken judicial notice •of by the court; hence the sustaining of the motion to strike nut was not error. The omission of the taxing officers of the •state in previous years to assess this property cannot control the duty imposed by law upon their successors or the legal construction of a statute under which its exemption is claimed. Vicksburg Railroad Co. v. Dennis, 116 U. S. 665. If it could, the consequence would be the lodging in their hands of the very power of exemption which the general assembly alone can validly wield, and that under the limitations of the constitution. Nor can laches be imputed to the state. “ The general principle is, that laches is not imputable to the government; and this maxim is founded not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions.” United States v. Kirkpatrick, 9 Wheat. 735; State ex rel. Lott v. Brewer, 64 Ala. 287; Eastern Bank v. Commonwealth, 10 Barr. 443; Canal Co. v. Commonwealth, 50 Pa. St. 399; Dennis v. R. R. Co., 34 La. Ann. 954, 958; Finley v. Philadelphia, 32 Pa. St. 381. Even if it were error, the plaintiff in error seems to have had full *177 benefit of it as if pleaded and proven. It is probable, however, that the claimed “ uniform construction ” has not been quite so “ uniform” as counsel suppose. At least in one of the counties through t^hich The Pittsburgh, Fort "Wayne & Chicago Railway passes, a different view obtained. In the year 1882 an action was brought to enjoin the county treasurer from collecting taxes on stock in that company owned by the plaintiff, and which the assessor had returned as subject to taxation. A demurrer was filed to the petition. The stockholder’s case was presented by two as able and experienced lawyers as practice in that part of the state to a common pleas judge of exceptional capacity. The demurrer was sustained, and the case was not further prosecuted. The extent of the ■claim for “ uniform construction ” seems to be that in case of doubt as to proper construction,-the construction by state and ■county officers should prevail. This has been at large argued and considered. This construction, counsel urge, has been known to the general assembly, and had it been the legislative will to tax such shares, further legislation would have been had to that effect. With equal pertinency this consideration could have been pressed in the case of Worthington v. Sebastian, supra, and in Bradley v. Bauder, supra. The argument lacks force as applied to this subject at this time. It somewhat tends to persuade, but does not convince.
Our conclusion is that there is not such doubt present as will make this claimed “ uniform construction ” available as against the claim for taxes here made. But the record in the case of The Western Insurance Company shows no ground for penalty. The cross-petition was apparently predicated on section 2859 of the Revised Statutes, which makes no provision for a penalty. It does not appear that the duplicate showed an entry by the auditor as contemplated by section 2855. Hence no penalty can be allowed.
In the case of Lee v. Sturges, a judgment will be rendered for the amount claimed, but without interest. In the other case the judgment of the superior court will be modified by *178 deduction of the amount of penalty included in the judgment, and otherwise affirmed.
Owen, C. J., and Hickman, J., dissent.