## STURGES *v.* CARTER, Treasurer.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

Argued March 31, 1885.—Decided May 4, 1885.

A statute of Ohio authorized county auditors to issue compulsory process to bring before them persons who, they had reason to believe, were making false returns of their property for purposes of taxation, and to examine them under oath, and required them to notify every person before making

entry on the tax list that he might have an opportunity to show that his statement or return was correct   A tax-payer was summoned. before the auditor to give information of property not returned for taxation, and appeared, and while in attendance was informed by the auditor of his purpose to increase the amount of property returned by him for taxation : *Held,* That this was a substantial compliance with the provision requiring the auditor to notify the tax-payer before making entry of the increase.

The act of the Legislature of Ohio of May 11, 1878, authorizing auditors to extend inquiries into returns of property for taxation, over a period of four years next before that in which the inquiry is made, is no violation of that provision in the Constitution of that State which declares that "the General Assembly shall have no power to pass retroactive laws."

Mr. Justice Story's definition of a retrospective law in *Society for Propagating the Gospel* v. *Wheeler*, 2 Gall. 139, has been adopted by the Supreme Court of the State of. Ohio, and is quoted and adopted by this court.

The provision § 59 Act of April 5, 1859, of Ohio, that "no person shall be required to list for taxation any certificate of the capital stock of any company, the capital stock of which is taxed in the name of the company," does not apply to shares in a foreign corporation which pays taxes in Ohio only on the portion of its property which is situated there.

This action, brought in a State court of Ohio by a county treasurer to recover taxes upon shares of stock of the Western Union Telegraph Company of New York, held by the defendant below and not returned by him for taxation, was removed to the Circuit Court of the United States after answer filed. Judgment below in favor of the plaintiff.   The defendant below sued out this writ of error.   The facts which make the case are stated in the opinion of the court.

*Mr. Albert G. Riddle* (*Mr. C. H. Scribner, Mr. Henry E. Davis,* and *Mr. James E. Padgett* were with him) for plaintiff in error.

*Mr. John W. Jenner,* and *Mr. Andrew Squire* submitted for defendant in error, on their brief.

Mr. Justice Woods delivered the opinion of the court.

This was an action brought by John A. Lee, as treasurer of Richmond County, in the State of Ohio, against Stephen B. Sturges to recover taxes levied for the years 1874, 1875, 1876 and 1877, upon shares of stock of the value of $100,000 in

the Western Union Telegraph Company, and certain credits and investments owned by Sturges, who during those years was a citizen of Ohio, residing in the city of Mansfield, in said county. The amount of the taxes sued for was $10,776.83, with the penalty thereon of ten per cent., amounting to $1,077.68, making a total of $11,854.50. The controversy in this case relates only to the taxes on the stock of the telegraph company.

Before the trial the term of office of Lee, the original plaintiff, expired, and Merchant Carter, his successor in office, was substituted as plaintiff in his stead. The parties waived a trial by jury and submitted the case to the court upon the issues of fact as well as of law.

The court made a special finding of facts from which it appeared as follows:

For ten years before the commencement of this suit the defendant was a citizen of said county; for the years 1874, 1875, 1876, and 1877 he made returns in accordance with law, purporting to contain full and accurate lists of all his personal property subject to taxation; the returns were received and acted upon as being correct until the 23d June, 1878, when the county auditor caused defendant to be subpœnaed to appear *instanter* before him at his office, to give information, pursuant to the statute in that case provided, of all property within his knowledge which had not been duly returned for taxation. The defendant accordingly appeared and submitted to an examination. Whilst undergoing examination the auditor exhibited to him a list of judgments and mortgages in his favor not included in his tax returns, and then and there told him that under the advice of the auditor of state, he felt it to be his duty to make a supplemental assessment against him for the four years named, of all the property which he owned during that period, which was subject to taxation in said county, and not included in his returns; called defendant's attention to the statute under which he proposed to proceed; and requested such explanation as he might deem it proper to make. Defendant thereupon made such explanations as he chose to offer.

This was the only notice given by the auditor to the defendant

of his intention to assess him on all personal property owned by him during said period, and not included in his tax returns.

The auditor then proceeded to assess the defendant on $100,000 of stock in the Western Union Telegraph Company for each of the years 1874, 1875, 1876, and 1877, and entered the same on a supplemental tax duplicate, and certified the same to the county treasurer for collection.

The defendant owned the telegraph stock so assessed during the four years aforesaid, and the same had not been included in his returns for taxation, nor had he been theretofore charged with or paid any tax on the same.

The Western Union Telegraph Company was organized under the laws of New York; it had a paid-up capital of $41,000,000; most of its property was situated outside of Ohio; it owns 4,950 miles of telegraph wires, with the chemicals and office furniture used in connection therewith, in Ohio, all which for ten years past it had regularly returned for taxation, and paid thereon from $10,000 to $15,000 per annum of tax to the State of Ohio.

From the findings of fact the court deduced the following among other conclusions of law:

"The auditor's said supplemental assessment was authorized, and is regular and valid, and under the statutes of Ohio, as construed by the courts of the State, the defendant is liable in this action for the amounts assessed on his Western Union Telegraph stock, and judgment will therefore be rendered against him for the tax so assessed thereon, with the damages prescribed by statute, and interest and costs."

The court thereupon rendered judgment against Sturges for $10,727.65, "the sum so as aforesaid found to be due," and thereupon Sturges sued out the present writ of error to reverse that judgment.

The first contention of the plaintiff in error is that the court erred in holding that the notice given to him by the auditor of Richland County was sufficient, under the statutes of Ohio, to authorize the assessment of the additional taxes, and in admitting evidence of what was said by the auditor to the plaintiff in error when the latter was under examination.

Section 2782 Rev. Stat. of Ohio, originally § 34 of the act of April 5, 1859, Swan and Critchfield's Statutes, page 1452, provides, in substance, that if the county auditor shall have reason to believe that any person has given to the assessor a false statement of his personal property, moneys, or credits, investments in bonds, stocks, joint stock companies, or otherwise, which are by law subject to taxation, or that the assessor has made an erroneous return of any such property, he shall proceed, at any time before the final settlement with the county treasurer, to charge such person on the duplicate with the proper amount of taxes, and to enable him to do this, he is authorized to issue compulsory process and require the attendance of any person " whom he might suppose to have a knowledge of the articles or value of the personal property, moneys, or credits, investments in bonds, stocks, joint stock companies, or otherwise, and examine such person or persons on oath in relation to such statement or return; and it shall be the duty of the auditor in all such cases to notify every such person, before making the entry on the tax list and duplicate, that he may have an opportunity of showing that his statement or return of the assessor was correct. And the county auditor shall in all such cases file in his office a statement of the facts or evidence on which he made such correction." These provisions of the statute have been in force ever since April 5, 1859.

The findings of fact show that the plaintiff in error was subpœnaed to appear before the auditor to give information of all property within his knowledge which had not been returned for taxation, and that, while in attendance before the auditor, he was informed by the latter of his purpose to increase the amount of the property returned by him for taxation. This was a substantial compliance with the statute, which required the auditor to notify the tax-payer, before making the entry of such increase on the tax list and duplicate, of his purpose to do so, so that he might have an opportunity of showing that his statement or the return of the assessor was correct. The subpœna served on the plaintiff in error and the conduct of the auditor under it gave him the opportunity to which the statute entitled him.

But the plaintiff in error contends, that, beside service of the subpœna requiring him to attend upon the auditor and give testimony in relation to property not returned for taxation, he was entitled to written notice before the auditor could make an entry on the tax list of any additional property omitted in his returns. The statute does not require any notice in writing except the compulsory process of subpœna to be served upon the person called to attend and testify. But if any further notice was required, it was waived by the plaintiff in error.

The finding of the Circuit Court shows that he appeared and submitted to an examination touching the correctness of his returns, that the auditor told him during such examination that as auditor he was required by his duty to make a supplemental assessment against him of the property which he had not included in his returns for the four years mentioned in the findings of the court, and requested him to make such explanations of his returns as he thought proper, and that he did make such as he chose. It does not appear that he complained that he had not received notice of the purpose of the auditor to increase the assessment of his property, or that the notice was not in writing, or that it was too short, or that he asked further time for consideration, or to take the advice of counsel, or to produce further evidence. From all that appears by the record, there was no surprise; he had opportunity to establish the correctness of the tax returns, and to show the auditor that he was not liable to an additional assessment. He cannot, therefore, complain of want of notice.

The plaintiff in error next insists that the law of 1878, by which the auditor assumed to correct the returns of the plaintiff in error for the years from 1874 to 1877 inclusive, and place his omitted property on the tax list, was retroactive, and therefore forbidden by section 28 of Article 2 of the Constitution of Ohio, which declares that "the General Assembly shall have no power to pass retroactive laws."

Before the passage of the act of 1878, the law of Ohio, § 1 of the act of April 5, 1859, Vol. 46, page 175, Laws of Ohio; Vol. 2 Swan & Critchfield's Revised Statutes of Ohio, page 1438, provided that all property, whether real or personal, in

the State, all moneys, credits, investments in bonds, stocks, etc., of persons residing therein, should be subject to taxation and entered on the list of taxable property for that purpose; and section six of the same act required the owner to make out and deliver to the assessor a statement under oath of all the personal property, moneys, investments in bonds or stocks, required to be listed for taxation. This was the law in force during the years for which the taxes sued for were assessed and levied, and it is still in force.

Section 34 of the act of April 5, 1859, re-enacted as § 2782 Rev. Stat. Ohio, of 1880, authorized, as we have stated, the county auditor, in case he believed any person had made a false return of his personal property, investments in bonds or stocks, to proceed at any time before the final settlement with the county treasurer, which was required to be made annually, to correct the return and charge such person on the duplicate with the proper amount of taxes. By § 1 of a supplementary act passed March 29, 1861, Vol. 58, page 47, Laws of Ohio, it was provided that if any person whose duty it was to make a return of property for taxation should make a false return, the auditor should ascertain the true amount of the taxable property that such person ought to have returned, and add thereto fifty per centum on the amount so ascertained, and the amount so ascertained, with the fifty per centum, should be entered on the duplicate for taxation. These enactments continued in force until the act of May 11, 1878, when they were amended by § 48 of that act by adding the following clause: "And the inquiry and corrections provided for in this and the next section may go as far back as the same can be traced, not exceeding the four years next prior to the year in which the inquiries and corrections are made; but as to former years no penalty should be added and only simple taxes should be claimed." Laws of Ohio, 1878, title 13, page 456; Rev. Stat. Ohio, of 1880, § 2781. As this act took effect upon its passage, it authorized the auditor, in any future corrections and adjustments of taxes due, to extend his inquiries back for a period of four years. It did not require him to wait four years after its passage before he could give it full effect.

It is this amendment of April 11, 1878, which the plaintiff in error insists is retroactive, because it authorizes the auditor to go back for a period of four years to correct false returns; whereas, before its passage he could not for that purpose go behind his annual settlement with the treasurer.

The complaint is not that the auditor was required to add fifty per centum to the value of the omitted property, for the old law authorized him to do that, provided he did it before his annual settlement with the county treasurer, and the new law authorized him to make the addition of fifty per centum for the current year only, so that in this respect the new law did not change the old; but that it was not competent for the legislature to go behind the annual adjustments' made of the taxes by the auditor with the tax-payer; that if the State had wrongfully assumed too much, the citizen was barred, and if the citizen had listed too little the State was barred, and that legislation which undertook to open these adjustments was retroactive.

In substance, this contention is that a tax-payer who has been evading the payment of the taxes due from him by making false returns, can shield himself behind the annual settlement made by the auditor with the treasurer, in which his returns were assumed to be true, and that the legislature can pass no act by which the falsity of the returns can for a limited period (in this case four years) be exposed, and the payment of the taxes enforced—in other words, that the tax-payer has a vested right in the fruits of his false returns. Such a proposition cannot be sustained. *Foster* v. *Essex Bank*, 16 Mass. 245.

In our opinion, no right of the tax-payer was invaded by the act of 1878. His investments in bonds and stocks were subject to taxation; the taxes upon such investments were due to the State, and the act of 1878 merely provided a method by which the taxes might be assessed and collected in spite of the annual settlements made by the auditor. It gave a new remedy to the State for enforcing a right which it had all the time possessed, namely, the right to the taxes upon property liable to taxation.

Such an act is not a retroactive law within the meaning of

the Constitution of Ohio. In the case of *The Society for Prop-agating the Gospel* v. *Wheeler*, 2 Gall. 139, Mr. Justice Story thus defines a retroactive, or, as he calls it, a retrospective law: "Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." The act of 1878 took away no vested right of the tax-payer, it imposed upon him no new duty or obligation, and subjected him to no new disability in reference to past transactions. The definition of Judge Story was adopted by the Supreme Court of Ohio in *Rairden* v. *Holden*, 15 Ohio St. 207, when construing the clause in the Constitution of Ohio now under consideration. Applying that definition, it is clear the provision in the act of May 11, 1878, complained of, is not open to the objection that it is forbidden by the Constitution of the State. See also *Goshorn* v. *Purcell*, 11 Ohio St. 641; *Greene Township* v. *Campbell*, 16 Ohio St. 11; *State* v. *Richland Township*, 20 Ohio St. 362; *Dow* v. *Norris*, 4 N. H. 16; *Clark* v. *Clark*, 10 N. H. 380; *Greenlaw* v. *Greenlaw*, 12 N. H. 200. The authorities cited are conclusive against the contention that the legislation under review is retroactive.

The plaintiff in error next insists that the Circuit Court erred in deciding that certificates or shares of capital stock in the Western Union Telegraph Company, held by him, were taxable in the State of Ohio.

Section 2 of Article 12 of the Constitution of Ohio declares: "Laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise."

To give effect to this provision the act of April 5, 1859, Rev. Stat., Swan & Critchfield, 1438, entitled "An Act for the assessment of all property in this State," &c., was passed. It was provided by § 1 of this act as follows: "All property, whether real or personal, in this State, all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, of persons residing therein, . . . except such as is hereinafter expressly exempted, shall be subject to taxation, and such

property, moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, or the value thereof, shall be entered on the list of taxable property for that purpose." By § 2 of the same act it was enacted as follows : " That the term investment in stocks, whenever used in this act, shall be held to mean and include all moneys invested . . . in any association, corporation, joint-stock company, or otherwise, the stock or capital of which is or may be divided into shares, which are transferable by each owner without the consent of the other partners or stockholders, for taxation of which no special provision is made by this act, held by persons residing in this State, either for themselves or as guardians, trustees, or agents."

There was no special provision for the taxation of such property, as the shares held by the plaintiff in error in the Western Union Telegraph Company. It is plain, therefore, that, under the act of April 5, 1859, the shares of stock held by the plaintiff in error were taxable in the State of Ohio, unless they were expressly exempted. The plaintiff in error relies upon an exemption contained in the ninth subdivision of § 3 of the act, which is as follows: " 9th. Each individual in this State may hold exempt from taxation personal property of any description, of which such individual is the actual owner, not exceeding fifty dollars in value ; . . . no person shall be required to include in his statement, as a part of the personal property, moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, which he is required to list, any share or portion of the capital stock or property of any company or corporation which is required to list or return its capital and property for taxation in this State." Rev. Stat. Swan & Critchfield, 1441.

Section 59 of the same act provides that " no person shall be required to list for taxation any certificate of the capital stock of any company, the capital stock of which is taxed in the name of the company."

As the findings of the Circuit Court show that a part of the property of the Western Union Telegraph Company was in the State of Ohio, and that it paid taxes on the same to the State,

the plaintiff in error insists that the shares of stock held by him in the company were exempted from taxation by the clauses of the act of April 5, 1859, which we have quoted.

This contention cannot be sustained. The law taxes the shares of the plaintiff in error unless they are " expressly exempted." The burden is on him to show an express exemption.

There is no exemption unless the payment by the Western Union Telegraph Company of the tax imposed on its property situated in the State, and which the findings of fact made by the Circuit Court show was but a small part of its whole property, relieves from taxation its shares held by a resident of the State.

It may be conceded that generally the capital or the capital stock of a corporation is its property. *Bank Tax Case*, 2 Wall. 200; *National Bank* v. *Commonwealth*, 9 Wall. 353. But the shares held by the stockholders are distinct from the capital stock of the corporation, and the taxation of both is not necessarily double taxation. *Farrington* v. *Tennessee*, 95 U. S. 679; *Dewing* v. *Perdicaries*, 96 U. S. 193; *Bradley* v. *Bauder*, 36 Ohio St. 28. The claim, therefore, of the plaintiff in error is to the exemption of a certain class of his property from taxation. But it has been repeatedly held by this court that an exemption from taxation must be expressed in clear and unmistakable terms and cannot be shown by doubtful or ambiguous language. *Providence Bank* v. *Billings*, 4 Pet. 514; *Gilfillan* v. *Union Canal Co.*, 109 U. S. 401.

The case, therefore, depends upon the construction of the statute. The Supreme Court of Ohio has decided, that shares owned by a resident of Ohio in a foreign corporation, none of whose capital was taxed in Ohio, but all of it in the State where the corporation had its home, was taxable in Ohio. *Bradley* v. *Bauder*, 36 Ohio St. 28. The controversy on this part of the case is, therefore, reduced to the question, whether the legislature has clearly and unmistakably expressed the purpose in the act under consideration to exempt from taxation shares in a foreign corporation owned by residents of Ohio, when but a small part of the property of the company was subject to taxation in Ohio.

The exemption from taxation of investments in stocks, provided by the statute, applies only to shares of those corporations which are required to return their capital and property for taxation in the State. *Jones* v. *Davis*, 35 Ohio St. 474. This clearly means those corporations which are required to return all, or substantially all, their capital and property. There is no rule of interpretation by which the statute can be held to apply to corporations who list only a small part of their property for taxation in Ohio. If the legislature had intended to allow an exemption in such a case, it could and would have expressed that purpose by words not admitting of doubt. As the shares of the plaintiff in error in the Western Union Telegraph Company were not only not expressly, but not even by fair implication, exempted from taxation, we are of opinion that the tax complained of was authorized by law.

Lastly, complaint is made that the Circuit Court erred in rendering judgment for the penalty and interest upon the additional taxes assessed against the plaintiff in error.

The judgment of the Circuit Court was for $10,727.65, which is less than the taxes demanded in the petition without either interest or penalty. The findings of fact do not show the rate of taxation for any one of the four years for which the taxes were recovered, and it is impossible for us to say that anything was included in the judgment but the simple taxes. It is true that the court said in its conclusion of law that judgment would be rendered for the tax, with the damages prescribed by statute, and interest and costs.

But we have not been referred to any statute which gives damages in this class of cases, and there is nothing in the findings to show that anything was actually included in the judgment, either for damages or interest. The amount of the judgment was based upon the assessment of the property of the plaintiff in error made by the auditor, a sworn public officer. Therefore, the burden is on the plaintiff in error to show by the record that the court rendered judgment for an amount not authorized by law. This he has failed to do.

Under the circumstances, we must presume that the judgment of the Circuit Court, in respect to its amount, as well as

in other respects, was right, unless the contrary is shown. *Ventress* v. *Smith,* 10 Pet. 161; *Townsend* v. *Jamison,* 7 How. 706, 714; *The Ship Potomac,* 2 Black, 581.

We find no error in the record.

*Judgment affirmed.*