Jenner, J.
(orally).
Plaintiffs in their petition aver, in substance, that since the 1st of April, 1887, and prior thereto, they have been the joint owners of a large amount of personal property, consisting of notes, moneys, credits, etc., during which time said property was under the control of John M. Lee, for their joint use and benefit; and during this time he resided in Pittsburgh, in the state of Pennsylvania, Emily A. Lee and Elizabeth Lee resided in Coshocton, Ohio. The property was held in the name of John M. Lee, and loaned out by him to parties residing in Coshocton county, Ohio.
They further aver, that he returned a part of said property for taxation in Coshocton county, Ohio, for the years 1887 and 1892, and the intervening years inclusive, the amount he returned for taxation each year being from $12,000 to $15,000.
They aver, that the auditor of Coshocton county, on the 7th day of June, 1893, without authority of law, placed additional taxes against them on the duplicate. One of the averments is, that John M. Lee controlled and managed all this property, and was a non-resident of the state of Ohio.
They further aver, in substance, that the auditor of Coshocton county made these additions on the duplicate without the authority of law, not having notified, as the statute requires, John M. Lee and Elizabeth Lee; notice to Emily is admitted. As to the year, 1887, it is averred the auditor had no authority under the statute to make any addition; that he has put a penalty of fifty per cent, for each year to the *367 total amount of omitted and returned property as made by John M. Lee, instead of fifty per cent, on the omitted property only, and the treasurer is about to enforce the collection of these taxes with the additions and penalties as aforesaid; and praying for an injunction restraining him from so doing. The defendant in his answer joins issue with all of these material allegations. He further avers, that the relation between the parties was that of partners, and that the fund is a partnership fund, controlled by Emily A. Lee, and loaned out by her in Coshocton county, and was held as one fund, and for that reason it was subject to taxation in said county.
The plaintiffs by reply deny these allegations.
The following questions are presented by the pleadings, and issue joined, between the parties:
First — Could all or any part of this fund be lawfully listed and taxed in Coshocton county, Ohio, while John M. Lee, the manager thereof, and in whose name it was loaned, was a resident of the state of Pennsylvania ?
Second — Had the auditor authority to place the property, or any part of it, upon the duplicate without giving notice of such intention to the plaintiff John M. Lee?
Third — Had the auditor authority in making the corrections on the 7th day of June, 1893, to include in his corrections the year 1887, and should the corrections have been made under section 2781, Rev. Stat. of Ohio, in accordance with its provisions prior to its amendment April 24, 1883, or as amended?
These are important questions, the amount charged against the plaintiffs is large, and while they involve the construction of the statutes, there is, as suggested in argument, some equitable principles, that must not be lost sight of, in determining the rights of all parties concerned.
"While there has been much time consumed in the trial, there is but little dispute about facts; it is more a question of law than one of disputed facts.
*368 The father of John M. Lee and Emily A. Lee resided in Coshocton county, and died there a number of years ago, leaving quite an estate, both real and personal. After the death of the father, the widow and children, for reasons satisfactory to themselves, kept the property together in common, or undivided.
The assets of the estate were largely money, or that which represented money, such as notes, secured by mortgage, etc.
This condition, as to the property, continued for a period of years, and for a time after the death of the father and during the life-time of a son, one George C. Lee; he controlled the funds, loaned and invested them in his name. At his death, which occurred about the year 1884, his interests descended to his brother and sister, the plaintiffs herein.
By contract introduced in evidence, it is shown that the mother, Elizabeth Lee, had a separate estate, and this separate estate, consisting largely of money, had been loaned by her husband during his life-time; sometimes part of his means and part of hers would be loaned, and one .note taken therefor, so that after the death of the father, and after George C. Lee’s death, it was, as is expressed in the written contract, difficult, if not impossible, to determine what the exact interest of the mother was in these funds, and for that reason the written contract offered in evidence was entered into. This occurred in April, 1884, and by the terms of the contract, it is provided that the mother, her son and daughter, should share equally in these assets, that they should be kept together as a unit, and managed and controlled by John M. Lee.
It is provided in the written contract that, on demand of either one of the parties, a division of the funds is to be made between them. The evidence of loans made in Coshocton county had at one time been taken to Pittsburgh by John M. Lee, where he had been a resident for a number of years, *369 prior to, and since the year 1874, the date of the written contract; but whatever part or portion of these evidences of loans, or credits were thus taken to Pittsburgh, they did not remain there long; they were brought back into this county, and there remained in the custody of Emily A. Lee.
Looking to the testimony of Judge Pomerene, of Emily and John M. Lee, there is but very little difference between them, as to the manner in which the business was managed. It appears from their testimony, that substantially the control of the funds, of the notes, and mortgages, subject to the direction of John M. Lee, was in Emily; that she advised with their attorney, Judge Pomerene, whose advice she followed. For a time the money in bank had been checked out by Emily, signing her brother’s name to the checks, subsequently this was changed, and she signed her own name to the checks, and controlled the fund in that way, subject to the general direction of John M. Lee.
The assessor would hand the tax list to Emily at her residence in Coshocton, she would send it to John M., at Pittsburgh, he would fill it out in his own name, and return it to her, and she to the assessor. The taxes were paid by Emily, as a general rule, but on two occasion John M. Lee paid the taxes, out of the proceeds of the fund in bank in this county.
On the 1st of March, 1893, the auditor of Coshocton county served on Emily A. Lee, a notice under the statute, requiring her to appear before him at the auditor’s office to show cause why additions should not be made to the returns. This notice was to Emily. It was dated March 1st, 1893. She appeared at the auditor’s office ; nothing was done on her first appearance, other than to ask for, and obtain a postponement. There was a like postponement had on three different occasions ; for what reason, is not important, and the examination went over until June 7th, 1893, when an examination was had and full and complete investigation made of whatever property they controlled and owned, and on request she *370 brought before the auditor their books, containing all of the notes, and Emily testified in the case, and upon this hearing, the auditor made his findings of facts, dated June 7th, 1893, and filed the same, as the statute required, in the auditor’s office, and proceeded to make the additions, aggregating a large sum, the total amount that he found for these various years down to 1892, including the year 1887, ranging from $40,000.00 to over $53,000.00, and he added a penalty of fifty per cent, to the whole amount of additions he made, as well as on the amounts that had been returned by John M. Lee during these years.
It has been urged in argument, that all the plaintiffs were not properly before the auditor at the time of the investigation. We construe these statutes, as to notice, to mean that without a notice as provided by the statute, the auditor would have no jurisdiction to place upon the duplicate any additional taxes; the citizen is entitled to that notice, if it has not been given, and if the auditor proceeds without it, his proceedings would be void, as much so as to take a judgment against a party without a summons would be without jurisdiction.
Telegrams have been introduced in evidence- which were sent to, and received by Emily A. Lee from her brother, then in California, and from these telegrams it is claimed that he had notice of what was going on, and what was the purpose of the investigation, and we would not hesitate to concede that he did know what was going on before the auditor. But we assume that it would not be claimed, if Emily lived in California and knew what the auditor was doing, and had no notice, that that alone would confer power on the auditor to make the additions to her taxes ? We think not. We take this view of the statute : if a party received word, however informally, and he appeared, either by counsel or in person, it would be such an appearance as would obviate a formal statutory notice.
It appears from the testimony of Judge Pomerene, Emily *371 A. Lee and her brother John M. Lee, that the mother of Emily and John M. was an invalid to such an extent that she was giving no attention to the management of her business, was incapable to transact business; Emily 'was acting for her mother, and Emily appeared before the auditor. She knew then that it was the intention of the auditor to investigate or ascertain whether or not her own property, and that of her mother’s had been properly returned for taxation, and from this fact, we would not hesitate to find that Elizabeth Lee should be bound by notice to her agent, even if the notice did not state just what was intended by the investigation. The language of the statute is, the auditor is required to “notify every such person.” It does not say how, whether by letter or written notice served by the sheriff, or a mere verbal notice.
Here we may refer briefly to the case of Sturges v. Carter, 114 U. S. Supreme Court, 512. It is one of the early cases; the Supreme Court was considering these sections of the Ohio Statutes, and sought to ascertain what construction the Supreme Court of Ohio placed upon them as to notice. The court say : “ A summons to a taxpayer to appear before the auditor, and a verbal notification by the auditor while in attendance before him of his purpose to increase the amount so returned is a compliance with section 2782, the section just referred to. The syllabus of the case is as follows: “The subpoena of a taxpayer to appear before the auditor to give information of all property within his knowledge, not returned for taxation, and notification while in attendance, of the auditor’s purpose to increase the amount so returned, is a substantial compliance with section 2782, Revised Statutes of Ohio, requiring the auditor to notify the taxpayer of his purpose to make such increase.”
The Supreme Court of Ohio, in two cases, that of Lee, Treas. v. Sturges and Insurance Company v. Ratterman, Treas., considered together in 46 Ohio St,, page 153, approve the holding of the Supreme Court of the United States, supra, in this
*372 language: “ To like effect is the holding of the Supreme Court of the United States in Bturges v. Garter, Treas., 114 U. S. 511.”
In Gager, Treas. v. A. W. Prout et al., 48 Ohio St., page 89, the court, while considering the question of notice under section 2782, of Revised Statutes, say, at page 116 : “ Conceding that the proceedings had before the auditor for the correction of returns of property for taxation are judicial in character, it does not follow, as we think, that they are to be governed by all the precise rules of the code of civil procedure for the commencement and prosecution of civil actions. Notice is required, but no particular style for the proceedings or form of notice is prescribed. It is therefore sufficient, if the notice fairly informs the party of the nature of the proceeding, and in what capacity he is to appear and answer.” It will be noticed in that case, page 110, the auditor sought to put on the duplicate taxes which had accrued before Mary E. Barney’s death, and the notice simply provided, among other things (the notice having been sent to her administrator). “ I shall proceed to assess and charge Mary E. Barney upon the tax duplicate of the county with the following amounts.” Mary E. Barney was dead at the time this notice was served, yet the court say this was a sufficient notice. We suggest this as being in line with what has been said as to the character of the notice required under the statute.
Had the auditor authority, under the statute, to go back and include in his corrections the year 1887? The statute provides that the auditor may go back in his investigations and correct the returns for five years next prior to the year in which the inquiries are made.
Whether the legislature, in the use of the term “ year,” in section 2781, meant a calendar year, or a tax year, in this ease, is not important. From all the testimony, and the written finding of facts, filed in the auditor’s office, it is shown that the examination and corrections occurred June 7th, 1893, and we think it is not material whether we construe it to be a tax *373 year or a calendar year. If the inquiry and correction had been made March 1st, 1893, the question then as to its being a tax or calendar year would be important; but in this ease, the investigation was made in June, 1893, that was the calendar year 1893, and it was also within the tax year of 1893. The tax year of 1893 would begin with the day preceding the second Monday in April. We hold that the auditor could not legally include the year 1887.
The next contention between counsel is, as to whether this investigation and correction by the auditor is to be governed by section 2781, as amended April 24th, 1893. As amended, the section referred to provides that a penalty of fifty per cent, should be added to the omitted taxes only, and not include the amount theretofore returned by the taxpayer. We have examined section 79, Revised Statutes, in connection with the case, found in 40 Ohio St., page 321, and there is no question if we follow the case in 40 Ohio St., that the auditor could only add the fifty per cent, penalty on the omitted taxes or additional sums added to the returns by the auditor.
Judge Martin, after considering section 79, Revised Statutes, says : “ In our view of the terms, actions, prosecutions and proceedings are used in in the statute with reference to judicial matters, and relate to the prosecution or defense of civil and criminal actions, and can have no just application to the statutory proceedings under consideration.”
We are clearly of the opinion, that the law as amended (Ohio Laws, vol. 90, page 233), should have controlled the auditor in making his corrections in this case, and only a penalty of fifty per cent. should be added to these additional taxes. Our statute, section 2734, requires : “ Every person of full age and sound mind shall list the personal property of which he is owner, and all moneys in his possession, all moneys invested, loaned or otherwise controlled by him, as agent or attorney.” It is contended by counsel for defendant, the treasurer, that Emily A. Lee was the agent, and controlled this *374 fund, and invested it in this county, and in collecting the notes, that she was substantially the agent for her mother and for John M. Lee, notwithstanding the written contract whereby the control and management of the whole fund was given over to John M.
The claim is, that she being his agent, and having authority to invest and x’e-invest and collect, that under the statute just cited, his interest as well as her own, and her mother’s, was taxable in this county.
A literal construction of this section would seem to justify the position taken by counsel, and in support of the claim, our attention is called to the case of Grant v. Jones, 39 Ohio St. 506.
This was the case of a peddler, who frequently visited Butler county in this state, and there loaned money, taking real estate security; his visits to this county were repeated as often as once a year, to transact his business, and then resuming his travels, carrying his notes and mortgages with him wherever he went. These visits to Butler county were for the temporary purpose stated, and never with the intention of making that his home, but he went there and looked after his notes and mortgages, collecting and re-investing, keeping this up for a term of yeai’s.
The auditor of Butler county placed these mortgage securities on the tax duplicate for some five years, by reason of the facts herein given. The court held he was not a resident of Ohio, and his notes and mortgages not subject to taxation in this state. Now, if the property of the peddler, his notes and mortgage securities, were not subject to taxation in Ohio, because he was a non-resident, if he had done by agent what he did himself, would these credits, notes and mortgages have been subject to taxation? We think not; it would be an unreasonable construction of the statute that the principal himself would escape taxation ; yet, if he did the same act by an agent he would be liable to taxation. The statute must be construed to mean, that when the principal is a resident of *375 the state, and from any cause incapacitated from making a return, as in the case of Mrs. Lee, or of one who may be temporarily absent, year after year in Europe, then the agent must list the personal property, tangible or intangible,, as provided in section 2734.
Returning to the facts’in this case, John M. Lee lived in Pittsburgh, Pa., and had lived there many years, before this-action accrued; in the light of this authority, and -of the case of Myers v. Seaberger, 45 Ohio St. 232, we hold that his interest in these funds was not subject to taxation in this county, because he was, and is a non-resident of the state of Ohio. The situs of his notes and mortgages is determined by his residence, and not by the place where they may happen to be held. This is the law. Credits evidenced by notes, mortgages, etc., are subject to taxation where the owner resides.
Therefore, under the facts in this case, we hold that the notice, served on Emily, was sufficient; that she knew what was-sought to be done by the auditor, that his object was to make additions to her taxable property, and that of her mother’s,, and that she was the agent of her mother, and that she and her mother were subject to taxation in this county, and that the examination before the auditor on June 7th, 1893, was-regular as to them ; but that John M. Lee was not bound by the proceedings of the auditor, even if he had lived in Ohio,, for want of notice, but Pittsburgh being his residence, we hold there was no authority to place any additions or taxes against him in Coshocton county, had he been duly notified. It is an undisputed fact, that John M. Lee, for a portion of the time covered by the investigation of the auditor, had in this fund, and represented by some of the notes, the following sums of money, his individual funds, $500.00, $1,600.00, $175.00 and $100.00, making an aggregate sum of $2,415.00, which together with one-third, John M.’s interest in the joint funds, is not taxable in Coshocton county, but the remainder of the *376 fund, that is, Emily’s and her mother’s shares, are subject to taxation in this county.
There is still another question that we think should be decided in this case, and that is as to the value of this property or fund for taxation. Counsel have an agreed statement of facts, giving us the amounts for alL.the years. The only difference is, that in the plaintiffs statement no interest is added, but the notes are taken at their face value, and the defendant’s claim is that interest should be added.
The rule, as we understand it, and as provided by section 2739, that we must determine what the fair value of the property is that should be listed or taxed.
That there are some inequitable things connected with the system of listing property in Ohio, is apparent to counsel and to everybody but here is the statute, and we recognize the rule of value to be as we have stated it. Take bank stock for example, it may be worth 100 cents on the dollar, yet it is never returned at 100 cents on the dollar, on the contrary the average is from 60 to 70 per cent. This is so, perhaps, without a single exception, throughout the state. If it is assessed in one county at 100 cents on the dollar, and in another, or in many counties, at 60 cents, then there is inequality, and it is inequitable and unfair.
In the light of these almost universal rules or methods of listing such property, we conclude and determine that it is only equitable and fair here in finding the value of this property to take the values without including interest.
When these values and taxes are adjusted and paid in accordance with the finding and ruling as stated by the court, the injunction in this case will be made perpetual as to the residue.
What should be done as to the payment of the costs ? These parties have only returned a portion of what they should have returned of their taxable property during these years, and it is equally evident that the auditor did what he had no right to do in placing upon the tax duplicate the penalty and *377 including a year that he had no authority to include against any of the plaintiffs; then he should have placed nothing on the duplicate against John M. Lee.
Voorhees & Voorhees and S. H. Nicholas, for plaintiffs.
W. R. Pomerene, E. W. James and J. B. Jones, for defendant.
We think it but just that each party pay their own costs, and the decree will be accordingly.