## LIQUOR TAX REFUNDERS BY REASON OF THE FLOOD.

Common Pleas Court of Lawrence County.

IN THE MATTER OF THE APPLICATION OF JAMES F. BOYLE FOR A
REFUNDER OF LIQUOR TAX BY REASON OF THE FLOOD.

Decided, June 17, 1913.

*Constitutional Law—Act Authorizing Refunders to Liquor Dealers
Closed for a Time by Flood Invalid Where Operating Retroactively,
and of Doubtful Validity Where Operating Prospectively.*

1. The act of the General Assembly to provide for a refunder of por-
tions of the tax on the traffic of intoxicating liquor in certain
cases of enforced discontinuance of said traffic (H. B. 663, passed
April 18, 1913), can not be made to operate retrospectively, so as
to apply to any such discontinuance occurring prior to the passage
and approval of such act, for the reason that such application
would offend against that portion of Section 28, Article II, Ohio
Constitution, forbidding the enactment of retroactive laws.
2. Whether said act is constitutional when operating prospectively,
*Quaere.*

*Lindsey K. Cooper,* Prosecuting Attorney, for the motion.
*H. M. Edwards, O. E. Irish, J. O. Yates* and *Johnson & Jones,*
contra.

CORN, J.

Heard on motion to dismiss the application.

The applicant, James F. Boyle (with several others), applies
to this court for an order upon the auditor of Lawrence county
for a refunder of his liquor tax, covering seven days for an
enforced discontinuance of business between March 28 and April
5, 1913, during which time his place of business was closed upon
order of the mayor of the city of Ironton on the occasion of the
disastrous flood which swept the Ohio valley at that time.

The application was filed in this court on May 10, 1913, under
favor of the Chapman act (H. B. No. 663, passed April 18, ap-
proved May 6, 1913), and filed in the office of the Secretary of
State the very day this application was filed here.

The act provides in substance that when a person engaged in the traffic of intoxicating liquors is required by order of the military or other authority of the United States or of the state, county, municipality, or township, or by or through fire, flood, earthquake, or other public calamity to discontinue business temporarily, such persons shall be entitled to a refunder of a proportionate amount of the tax paid under Section 6071 *et seq.,* based upon the number of days or fraction thereof, of enforced discontinuance.

The act then provides the procedure to be followed, and the applicant here files his claim in accordance therewith. The prosecuting attorney moves to dismiss the application "for the reason that under the law of Ohio the applicant is not entitled to the relief prayed in said application, or to any relief upon the facts set out therein."

It is contended in support of this motion that even if this act is constitutional, it can not be made to apply to enforced discontinuances consequent upon any of the causes enumerated in the act, occurring prior to its passage.

Whether this act is unconstitutional because of its belonging in the category of "class legislation," or for any other reason, it is not now necessary to decide, but we leave that question to be determined either by one of the higher tribunals, or upon a case wherein it is sought to apply its provisions prospectively. That the General Assembly intended this act to operate retrospectively is quite clear from the language of the act itself: "The act shall apply to any such discontinuance of business in the assessment year beginning the fourth Monday of May, 1912, and thereafter."

And in an effort to make it an emergency act so as to defeat the referendum, the following language is used, some of which pronounces a most remarkable doctrine: "An emergency is hereby declared to exist, *by reason of the disastrous floods* that have rendered the transaction of business *in certain places* impossible or unwise, and *for the preservation of the public welfare* it is necessary that this act be in immediate effect," etc. [The italics are mine.]

The reference to the results of the recent unprecedented floods leaves no room to doubt that the intention of the Legislature in passing this law and declaring an emergency to exist so that the "public welfare" required the act to be in immediate effect was that it should reach back to the discontinuances caused by the flood and afford traffickers in intoxicating liquors the relief attempted to be provided for in the act, where, it is conceded in argument, no remedy existed at the time of the discontinuances. The question is, therefore, presented whether it is within the power of the General Assembly so to legislate. I think not.

Section 28 of Article II of the fundamental law of this state provides among other things, "The General Assembly shall have no power to pass retroactive laws," and this law, if permitted to operate as requested by the applicant, would certainly offend against this inhibition of power.

It is argued that it is not every law that operates retrospectively that is unconstitutional; that is all very true, but the test is announced by Judge Bradbury in *Commissioners* v. *Rosche Bros.*, 50 O. S., 111, as follows:

"If it creates a new right, rather than affords a new remedy to enforce an existing right, it is prohibited by this clause of the Constitution of this state."

Judge Story defines a retrospective, or retroactive law, as follows:

"Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, must be deemed retrospective."

This definition was approved by the Supreme Court in *Rairden et al* v. *Holden*, 15 O. S., 207, and adopted by the United States Supreme Court in *Sturges* v. *Carter*, 114 U. S., 511.

Now, in the light of these quotations, when it is sought to apply this law to transactions already past, how stands the case? Clearly, the act becomes retroactive and therefore not applicable to afford Boyle the relief sought or any relief, upon the facts presented in his application.

If we may fairly assume that the officials of the county have performed their official functions, "that that is done which ought to be done," then it follows that the entire tax for the year 1912 has been paid in and properly distributed, to-wit, three-tenths passed to the credit of the general revenue fund of the state and paid into the state treasury; five-tenths paid into the treasury of the city of Ironton, wherein the business is conducted, and the remaining two-tenths passed to the credit of the poor fund of this county. (Sections 6093 and 6094, General Code.) Therefore, to require Lawrence county to bear all of the proposed refunder would certainly "create a new obligation" on the county and "take away or impair vested rights acquired" under the existing laws aforesaid. There could be "no surplus or unexpended funds" arising from this tax in the hands of the treasurer from which to pay the claim should it be allowed.

There being at the time of the discontinuance alleged no law in force providing for a refunder of a *pro rata* part of the liquor tax, and it being beyond the power of the General Assembly to enact legislation providing for a refunder for such past events, it follows as alleged in the motion, that under the law of Ohio, the applicant is not entitled to the relief asked, or to any relief upon the facts alleged.

The motion to dismiss is, therefore, granted and the application is accordingly dismissed at the costs of the applicant.