## RHEES v. MORRIS.

(Court of Appeals of District of Columbia. Submitted April 7, 1922. Decided May 1, 1922.)

No. 3739.

1. **Dismissal and nonsuit ⚖➡25—Nonsuit can be entered as to minor defendants, and action continued against adults.**

In action for broker's commission against the owners of property, some of whom were minors, it was proper, under Code, §§ 1205, 1209, after issues were joined, to enter a nonsuit as to the minors and to proceed against the remaining defendants.

2. **Appeal and error ⚖➡928(1)—Instructions not in record presumed correct.**

Where the charge is not in the record, the Court of Appeals must assume the instructions were proper.

3. **Tenancy in common ⚖➡51—One cotenant can contract to pay broker's commission.**

One of several owners of property can make a valid agreement with a broker to pay the latter a commission for procuring a purchaser for the property, though some of the co-owners are minors.

4. **Brokers ⚖➡86(1)—Evidence held to sustain verdict finding against contention that broker's contract was delivered on a condition.**

In an action for a broker's commission, evidence that the broker refused to take the contract, when defendant stated he had no authority from the co-owners, but accepted contract a few days thereafter, when the plaintiff stated he had such authority, except as to the owners who were minors, *held* to sustain a verdict finding against defendant's contention that contract was delivered to the broker on condition it should not take effect until the other owners authorized it.

5. **Brokers ⚖➡44—Appointment of broker as trustee to sell infants' interest in property held not to defeat right to commission under contract with adult owner.**

A broker's right to commission for procuring a purchaser for property under a contract with one of the adult owners is not defeated by the fact that the broker was thereafter appointed trustee to sell the interest of the infant owners, on the theory that the subject-matter of the agency was thereby taken out of such adult owner's control and the brokers'

agency was terminated, since a contract employing a broker to procure a purchaser does not require the party employing him to have any interest in the property or control over it.

Appeal from the Supreme Court of the District of Columbia.

Action by Charles W. Morris against B. R. Rhees and others to recover on a contract for broker's commission. Judgment for plaintiff against the named defendant, and that defendant appeals. Affirmed.

Levi Cooke, Guy H. Johnson, and Ralph P. Barnard, all of Washington, D. C., for appellant.

Thomas C. Bradley, of Washington, D. C., for appellee.

SMYTH, Chief Justice. Morris sued Rhees and others to recover money claimed to be due him on a contract. He alleged that under the contract he was employed by Rhees as his exclusive agent to procure a purchaser for a tract of land located in the District of Columbia, and was to be paid a certain commission if he submitted a bona fide offer of purchase, or if the property was sold by Rhees or any other person during the time the agreement was in force.

Rhees, his mother, sisters, and two minors were the owners of the land. He entered into negotiations with Morris, a real estate agent, for the purpose of having him procure a purchaser for the property. At first Rhees said to Morris that he represented the adults and had authority from them to make sale of the property, but that, as some of the owners were infants, no sale could be made without an order of court. Morris declined to accept the agency unless Rhees had full authority to act for all the parties interested. Thereupon the contract in suit was signed by Rhees and Morris personally. Rhees did not assume therein to represent any one but himself. He alone, according to the terms of the contract, employed Morris. The contract was delivered, and Morris, acting under it, conveyed prospective purchasers to the land, advertised it, and continued to do so until he was informed by Rhees that the property had been sold. Later it developed that a sale was effected through another real estate agent.

[1, 2] Upon learning of the disposition of the property, Morris demanded his commission as provided in the contract; but Rhees refused to pay, and Morris then brought this action. He sued Rhees in his own right and as trustee, under the order of the Supreme Court directing the sale of the property, and sued the other defendants in their own right, alleging that they, acting through Rhees as their duly authorized agent, entered into the contract. Issues having been joined, a nonsuit was entered as to the minors, and the suit proceeded against the remaining defendants. This course was proper under Code, §§ 1205, 1209. Under correct instructions—we must assume, because the court's charge is not in the record (Boley v. Griswold, 20 Wall, 486, 488, 22 L. Ed. 375; Sturges v. Carter, 114 U. S. 511, 522, 5 Sup. Ct. 1014, 29 L. Ed. 240; Shreveport v. Cole, 129 U. S. 36, 42, 9 Sup. Ct. 210, 32 L. Ed. 589)—the case was submitted to a jury, which found against Rhees and in favor of the other defendants. From a judgment on the verdict Rhees appeals.

A similar contract was made by Rhees and Morris with respect to other land owned by the same parties. Morris procured a purchaser for the other land, but it was necessary to apply to a court of equity for authority to sell. The application was made, and Morris appointed a trustee to make the sale. He sold the property, and his action was ratified by the court, and thereupon he resigned as trustee.

Rhees asks for a reversal upon two grounds, namely: (a) That the contract was unenforceable from the beginning; and (b) that, if enforceable at any time, it was terminated by plaintiff's accepting the trusteeship in the equity suit.

[3, 4] The contract was not violative of any law. It was deliberately entered into by Rhees. Morris, with Rhees' knowledge and acquiescence, proceeded to perform it, and observed its provisions until Rhees breached it. But Rhees urges that it was delivered upon condition that it was not to become binding until he had obtained full authority from all the owners, including the minors, to employ Morris. The record, however, does not bear him out in this. Morris says he told Rhees he would not undertake to sell unless Rhees had "full authority to act for all parties interested in the property"; that Rhees then left his office, and in a few days thereafter returned and said that he had such authority. Thereupon Morris handed him drafts of the two proposed contracts. We are concerned only with the one in controversy. He read it, made objection to the amount of the commission named therein, then waived the objection, and signed the contract. Nothing was said to the effect that it was not to become effective until Morris had secured authority from the other owners. There was no reason for saying anything about it, according to Morris' theory, because Rhees had already assured him that he had the authority. The fact that Morris knew, or should have known, that Rhees did not have the authority to speak for the others, is immaterial. He did not by his contract attempt to dispose of their interests, or to impose any obligation upon them. He was a part owner of the property, and it was entirely proper for him to engage Morris to procure a purchaser and to agree to pay him for his services.

Rhees gives a somewhat different version of the affair. He says he informed Morris that he did not have authority from the adults, and could not, of course, secure any from the minors, but that nevertheless he signed the contract, because Morris insisted. He does not say, however, that he did so on condition of any kind—certainly not on the condition that it would not be binding until he had secured the authority of all the others. That Morris did not understand that the contract was conditional is evidenced by the undisputed fact that he proceeded at once to perform it by advertising and otherwise endeavoring to procure a purchaser. Even if we assume that there was a dispute of fact with respect to whether or not the delivery of the contract was conditional, that dispute was submitted to the jury and resolved against Rhees. It must therefore be said that the contract was delivered unconditionally and is enforceable.

Cases are cited by the appellant to the point that, where a contract is delivered on condition, it does not become effective until the condi-

tion is satisfied. We do not deny this principle, but it has no application, because the jury found there was no condition.

[5] The appointment of Morris as trustee by the equity court to sell the property covered by the other contract is of no importance. The suit in which the appointment was made was a friendly one, instituted by Rhees for the purpose of securing authority to sell the minors' interest. It embraced the property covered by both contracts. Rhees' theory is that, when the court acquired jurisdiction of the parties and the property, the subject-matter of the agency was taken out of his control, and thereby the Morris agency was terminated. But this is a misapprehension of the scope of the contract. It did not authorize Morris to sell the property, but to procure a purchaser. To make such a contract it was not necessary that Rhees should have had any control whatever over the property, or even any interest in it.

There is no merit in either of the contentions advanced by Rhees, and therefore the judgment is affirmed, with costs.

Affirmed.