LUCY ANDERSON, Plaintiff, *v.* TITLE GUARANTEE AND TRUST COMPANY, Defendant.*

Supreme Court, Special Term, Kings County, May 15, 1936.

---

* Affd., 248 App. Div. ——.

*Milbank, Tweed, Hope & Webb,* for the defendant.

McLaughlin (Alonzo G.), J. On August 12, 1931, Sheer Long Beach Company, Inc., executed and delivered to the defendant its bond conditioned for the payment of the sum of $200,000 on July 1, 1934, with interest thereon at the rate of six per cent per annum payable semi-annually. As security for the payment of said bond, Sheer Long Beach Company, Inc., executed and delivered to the defendant a mortgage covering a tract of vacant land in Nassau county, L. I. Participating shares or certificates in said bond and mortgage were sold by the defendant to the general public.

Bond and Mortgage Guarantee Company, for a consideration paid to it at or about the time of the execution and delivery of said bond and mortgage, guaranteed the payment of the principal and interest thereon as the same matured, to the defendant, and to the holders of all participating shares or certificates therein. Sales of such certificates were made by the defendant upon the strength of such guaranty. On August 14, 1931, the defendant sold a $2,000 participating certificate in such bond and mortgage, so guaranteed as to principal and interest, to the plaintiff herein for the sum of $2,000.

Plaintiff now sues in rescission to recover said sum of $2,000 from the defendant. The complaint alleges in substance that to induce the plaintiff to purchase said guaranteed certificate defendant falsely and fraudulently represented that the mortgaged premises consisted of improved and unincumbered real property worth fifty per cent more than the amount loaned thereon, and that said bond and mortgage, and the participating certificates therein, were guaranteed as to principal and interest by Bond and Mortgage Guarantee Company; that Bond and Mortgage Guarantee Company was organized under the Insurance Law of the State of New York, and was limited by its charter to guarantee only the payment of principal and interest of bonds or notes secured by mortgages on improved and unincumbered real estate worth fifty per cent more than the amount loaned thereon; that the property covered by the mortgage in question consisted of vacant and unimproved land; that Bond and Mortgage Guarantee Company had no power or authority to guarantee the payment of the principal and interest of said bond and mortgage, or any participating interest or certificate therein; that the defendant, at the time of such sale to the plaintiff, had full knowledge of all the facts in connection with the said transaction, and of the limitation of the power and authority of Bond and Mortgage Guarantee Company.

Defendant's answer denies that any false or fraudulent representations were made in connection with such sale to the plaintiff, and further denies that Bond and Mortgage Guarantee Company was without power or authority to make the guaranty in question. By way of affirmative defense, it is alleged that the plaintiff, with full knowledge of the facts, ratified and approved the transaction, and obtained the benefits thereof.

Plaintiff moves for summary judgment, relying entirely upon the claimed lack of power and authority on the part of Bond and Mortgage Guarantee Company to make the guaranty in question. It is contended that Bond and Mortgage Guarantee Company exceeded its corporate powers, and acted in violation of law; that the guaranty was both *ultra vires* and illegal.

In 1885 the Legislature passed an act to provide for the organization and regulation of corporations to examine and guarantee bonds and mortgages and titles to real estate, known as chapter 538 of the Laws of 1885. Section 1 thereof provided: " Corporations may be organized under the provisions of this act for the purpose of examining titles to real estate, of procuring and furnishing information in relation thereto, and of guaranteeing or insuring bonds and mortgages, and the owners of real estate and others interested therein against loss by reason of defective titles and other incumbrances of or upon such real estate."

On April 19, 1892, Bond and Mortgage Guarantee Company was incorporated under this act. Its charter sets forth its purposes specifically in the language of the statute as follows: " That we intend to form a corporation for the purpose of examining titles to real estate and procuring and furnishing information in relation thereto, and of guaranteeing or insuring bonds and mortgages, and the owners of real estate and others interested therein against loss by reason of defective titles, and other encumbrances of or upon real estate." Since the date of its incorporation, said company has engaged in the business of guaranteeing the payment of principal and interest of bonds or notes secured by mortgages on real estate.

Subsequent to the incorporation of Bond and Mortgage Guarantee Company, the Legislature enacted chapter 690 of the Laws of 1892, which was a codification and compilation of the different laws relating to and regulating insurance companies. Section 170, subdivision 1, thereof was substantially a re-enactment of the provisions of chapter 538 of the Laws of 1885, above referred to. By section 37 of this act, which is substantially the same as section 37 of the present Insurance Law, it was provided that "Any domestic insurance corporation heretofore incorporated or extended under the provisions of any general or special law of the State is hereby brought under all of the provisions of this chapter relating to such corporation, except that its capital may continue of the amount named in its charter during the existing term thereof, unless it extends to other kinds of insurance, and *it shall be entitled to all privileges granted by such charter not authorized by this chapter.*"

By chapter 543 of the Laws of 1904 subdivision 1 of section 170 of the Insurance Law was amended to read as follows: " To examine titles to real property and chattels real, to procure and furnish information in relation thereto, make and guarantee the correctness of searches for all instruments, liens or charges affecting the same, guarantee or insure the payment of bonds and mortgages and guarantee and insure the owners of real property and chattels

real and others interested therein against the loss by reason of defective titles thereto and other incumbrances thereon which shall be known as a title guarantee corporation."

By chapter 525 of the Laws of 1911 the purposes for which such a corporation could be formed were limited in respect of guaranteeing the payment of principal and interest on bonds and mortgages to " such bonds  *  *  *  as are lawful investments for insurance companies." Lawful investments under the Insurance Law were " bonds and mortgages on improved and unencumbered real property in this State worth fifty per centum more than the amount loaned thereon." (Insurance Law, § 16.)

By chapter 215 of the Laws of 1913, corporations formed under the act were permitted to guarantee or insure the payment of bonds and mortgages, or notes secured by mortgages upon real property situated in this or any other State, and to " invest in, purchase and sell, with such guarantee, or with guarantee only against loss by reason of defective title or encumbrances, bonds and  *  *  *  notes  *  *  *  secured by mortgages upon improved and unincumbered real property situated in this or any other State worth fifty per centum more than the amount loaned thereon."

By chapter 290 of the Laws of 1929 the powers and purposes of such a corporation formed under the act were further limited to " invest in, purchase and sell, with or without guaranty, or guarantee the payment of the same without purchase, bonds, notes, and other evidence of indebtedness  *.  *  *  secured by mortgage or mortgages  *  *  *  upon improved and unincumbered real property situate in this or any other State of the United States worth fifty per centum more than the amount loaned thereon." (Insurance Law, § 170, as amd.)

If the corporate powers and purposes of Bond and Mortgage Guarantee Company were subject to the limitations imposed by section 170 of the Insurance Law as last amended, it had no power or authority to guarantee the certificates which plaintiff holds. However, there is nothing in any of the amendments to the Insurance Law above quoted which limits or restricts the rights, powers and privileges theretofore given or conferred upon Bond and Mortgage Guarantee Company by the provisions of chapter 538 of the Laws of 1885 under which it was incorporated. In the absence of such specific limitations and restrictions, it must be presumed that the company was permitted to enjoy the objects and purposes of its creation, and to carry on the business for which it was incorporated as set forth in its original charter, and as permitted by the laws of its creation as they then existed. Had the Legislature

intended to deprive any corporation of its powers and privileges as expressly given or granted to it by its original charter, it would have so expressly provided in the various amendments above referred to. That it did not do so clearly indicates that the statement of the objects and purposes as set forth in the various amendments was intended to affect only corporations formed subsequent to such amendments.

The question, therefore, arises, was Bond and Mortgage Guarantee Company authorized and empowered under the provisions of its charter, and the laws of its incorporation, to wit, chapter 538 of the Laws of 1885, to guarantee the payment of principal and interest on bonds secured by mortgages on unimproved real property? Although the language of the statute is somewhat ambiguous, I believe that it was intended that a corporation organized under the act as it then existed was to have the power to guarantee the payment of principal and interest on bonds secured by mortgages on improved and unimproved real estate.

Prior to the formation of Bond and Mortgage Guarantee Company, the Superintendent of Insurance, the administrative officer charged by law with the regulation of the insurance business and the enforcement of the laws in relation thereto, requested that the Attorney-General construe the act in question, and particularly to advise him whether a corporation organized thereunder had power and authority to issue policies guaranteeing the payment of principal and interest upon bonds secured by mortgages. On September 20, 1889, Charles F. Tabor, then Attorney-General of the State of New York, wrote to the Superintendent of Insurance advising him as follows:

" Your communication of the sixteenth instant inclosing a letter addressed to you by Charles Unangst, Esq., has been received, asking me, if, in my opinion, a corporation formed under the provisions of chapter 538 of the Laws of 1885, has power to issue policies to mortgagees, that will not only protect them against loss by reason of defect of title, but also containing a guarantee of the collection or payment of the bond and mortgage at their maturity.

" The act in question is entitled ' An act to provide for the organization and regulation of corporations to examine and guarantee bonds and mortgages and titles to real estate.'

" Section 1 provides that ' Corporations may be organized under the provisions of this act for the purpose of examining titles to real estate, of procuring and furnishing information in relation thereto, and of guaranteeing or insuring bonds and mortgages, and the owners

of real estate and others interested therein against loss by reason of defective titles and other incumbrances of or upon such real estate,' and section 3 provides that the certificate shall state that it is the intention of the persons forming a corporation under the act, to form a corporation for the purpose of examining titles to real estate, and guaranteeing and insuring the same; and bonds and mortgages as expressed in the first section of this act.

" The power of ' guaranteeing and insuring bonds and mortgages ' is not limited by the act, and there is nothing indicating what the nature of the loss shall be, against which the insurance or guaranty may be issued. The insurance or guaranty of bonds and mortgages seems to be a distinct and separate power by itself. The power to insure or guarantee a bond and mortgage necessarily implies that the insurance or guaranty is against loss of some kind or other; and the statute being silent as to the nature of the loss against which the insurance may issue, and loss by failure of payment, or title of the mortgagor being the most common losses a mortgagee is likely to suffer, it is fair to assume, I think, that these losses are fairly within the power granted as contemplated by the statute.

" I am of the opinion, therefore, that corporations duly formed under chapter 538 of the Laws of 1885, and which have complied with all the necessary provisions thereof, may legally issue policies or guaranties to mortgagees against loss by failure of payment, or failure of title of the mortgagor in the mortgaged premises." (Opinions of Attorney-General 1889, p. 339.)

The Superintendent of Insurance adopted this construction and interpretation of the law, and for a period of over forty years allowed and permitted Bond and Mortgage Guarantee Company to guarantee the payment of principal and interest on mortgages on improved as well as unimproved real estate. Three other companies incorporated prior to the amendment of 1904, to wit, the Title Guarantee Company of Rochester, the Lawyers Mortgage Company, and the Westchester Bronx Guarantee Company, were permitted to enjoy the same privileges.

During the entire corporate existence of Bond and Mortgage Guarantee Company, its business was conducted under the supervision of the Superintendent of Insurance, whose duty it was to familiarize himself with the nature, character and extent of all guaranties issued by such company. It is true that the opinion of the Attorney-General has not the force of law. However, " The principle is a familiar one that in the interpretation of a doubtful or ambiguous statute the long continued and uniform practice of the authorities charged with its administration is entitled to great

weight and will not be disturbed except for cogent reasons." (*Louisville & Nashville R. R. Co.* v. *United States*, 282 U. S. 740.) " It is a settled doctrine * * * that, in case of ambiguity, the judicial department will lean in favor of a construction given to a statute by the department charged with the execution of such statute, and, if such construction be acted upon for a number of years, will look with disfavor upon any sudden change, whereby parties who have contracted with the government upon the faith of such construction may be prejudiced." (*United States* v. *Alabama R. R. Co.*, 142 U. S. 615, 621.)

In *Matter of W. S. A. & P. R. R. Co.* (115 N. Y. 442, 447) the court said: " For more than twenty-five years corporations of that nature have been formed under it, and no State officer whose duty it would have been to refuse to file such articles of association if the act did not provide for their organization has ever thus refused; but, on the contrary, there would seem to have been an uniform recognition of the right to file such articles and of the legality of this kind of corporation thus formed. Such acquiescence and recognition on the part of the officers of the government are of very considerable, if not of controlling weight in the interpretation of a general act of the Legislature relating to public objects like the one under discussion. (*Easton* v. *Pickersgill*, 55 N. Y. 310; *People* v. *Dayton*, Id. 367.) " In *City of New York* v. *New York City R. Co.* (193 N. Y. 543, 549) the court said: " So, when the meaning of a statute is doubtful, a practical construction by those for whom the law was enacted, or by public officers whose duty it was to enforce it, acquiesced in by all for a long period of time, in the language of Mr. Justice Nelson, ' is entitled to great if not controlling influence.' (*Chicago* v. *Sheldon*, 9 Wall. 50, 54.) "

If there were any doubt, therefore, as to the power and authority of Bond and Mortgage Guarantee Company to guarantee payment of principal and interest on bonds and mortgages under its charter, that doubt has been resolved in its favor by the uniform recognition of that power and authority for a period of over forty years by the Superintendent of Insurance and his interpretation of the statute under which the company was organized. But even if we were to assume that the guaranty of the principal and interest of the bond and mortgage in question, and the participation certificates therein, were beyond the power conferred upon it by its charter, it does not follow that the guaranty was invalid or unenforcible.

Bond and Mortgage Guarantee Company received a consideration for the issuance of its guaranty. Over a long period of years

it represented to the general public that it had the power to guarantee bonds and mortgages and participation certificates therein of like character, and the public, in purchasing these guaranteed bonds and certificates, relied thereon. It would be estopped in the face of its conduct over all these years from setting up the defense of *ultra vires*. (*State Bank of Commerce* v. *Stone*, 261 N. Y. 175.) Furthermore Bond and Mortgage Guarantee Company has never asserted any such defense, nor is it claimed that it intends to do so. In *Friedman* v. *Title Guarantee & Trust Co.* (decided by Mr. Justice SMITH, 161 Misc. 88) an action was brought to rescind the purchase and sale of certain participation certificates in a mortgage upon unimproved real property, and to recover the purchase price of such certificates. The basis of the action was that the guaranty of payment of Bond and Mortgage Guarantee Company, which accompanied the certificate, and which induced its purchase, was ineffectual and invalid because it had no power under its charter to guarantee the payment of principal and interest upon a bond and mortgage or participation certificates therein where such bond was secured by a mortgage upon unimproved real estate. It was contended, therefore, that such guaranty was *ultra vires*, and entitled the plaintiff to rescind the sale and recover the purchase price. The facts in that case are identically the same as those in the case at bar. The court, in dismissing the complaint as being insufficient in law, said, in a very able and exhaustive opinion in which all the authorities on the subject were very carefully reviewed: " The mere fact that the contract entered into by the guarantor is *ultra vires* does not bar plaintiff from recovering thereon. As far as the plaintiff is concerned, as the contract has been executed on her part and the guarantor has received the benefit of her performance, she may enforce the guaranty against it and the plea of *ultra vires* will be of no avail, particularly where such a defense will be unjust and inequitable and result in a legal wrong to plaintiff."

Plaintiff's motion for summary judgment is denied.