MICHAEL FREDERICI and ROSE FREDERICI, Appellants, *v.* TITLE GUARANTEE AND TRUST COMPANY, Respondent.

Second Department, March 19, 1937.

*Samuel Silbiger*, for the appellants.

*Richard S. Holmes* [*Wilber Stammler* with him on the brief], for the respondent.

HAGARTY, J. In the year 1925 plaintiffs purchased from the defendant a $7,500 bond, secured by a mortgage on unimproved real property, payment of which was guaranteed by the bond and mortgage guarantee company, hereinafter referred to as " the mortgage company." Rescission is sought on the ground of fraud. The basis of the cause of action is that the guaranty of the mortgage company is void, although represented by the defendant to have been a valid guaranty. The question presented is whether or not the mortgage company had the power to guarantee payment of this mortgage on unimproved real property.

Section 170 of the Insurance Law, as amended by chapter 290 of the Laws of 1929, provides as to title and credit guaranty corporations that they may invest in, purchase and sell, with or without guaranty, or guaranty of payment, bonds secured by mortgage or mortgages upon improved and unincumbered real property, situate in the United States, worth fifty per cent more than the amount loaned thereon. Clearly, then, the guaranty in question here is repugnant to this statute permitting guaranty of payment

on improved property exclusively. But this statute, as so amended in 1929, is inapplicable, not only because the transaction here in question took place before that amendment, but the power of the mortgage company to guarantee payment of bonds and mortgages which inured to it by virtue of the statute under which it was created, has been preserved to it.

The respondent's contentions in support of the validity of the guaranty are twofold: *First*, that the mortgage company was permitted to guarantee payment of bonds and mortgages without restriction as to the improved character of the real property under the statute in force at the time of its creation, and that its power to do so since then has been preserved by saving clauses contained in the Insurance Law, despite amendments; and *second*, that up to and including the time of this purchase, a guaranty upon unimproved real property was lawful.

Concededly, the mortgage company was organized pursuant to the provisions of chapter 538 of the Laws of 1885. That act is entitled: " An Act to provide for the organization and regulation of corporations to examine and guarantee bonds and mortgages and titles to real estate."

Section 1 of the act provides:

" Section 1. Corporations may be organized under the provisions of this act for the purpose of examining titles to real estate, of procuring and furnishing information in relation thereto, and of guaranteeing or insuring bonds and mortgages, and the owners of real estate and others interested therein against loss by reason of defective titles and other incumbrances of or upon such real estate."

It will be noted that the purposes for which such corporations may have been organized under that section were four in number: *First*, for the purpose of examining titles to real estate; *second*, of procuring and furnishing information relating thereto; *third*, of guaranteeing or insuring bonds and mortgages; and *fourth*, of guaranteeing " the owners of real estate and others interested therein against loss by reason of defective titles and other incumbrances of or upon such real estate."

The appellants claim that this provision with respect to the power of such corporation, so organized, to guarantee or insure bonds and mortgages must be limited to a guaranty with respect to the mortgagee's title, even though it will be noted that the provision with respect to the guaranteeing of bonds and mortgages contained in the section is separated by a comma from that with respect to defective titles and incumbrances. The appellants point to sections 14 and 15 of this act, which provide for the invest-

ment of the capital of such corporations in bonds and mortgages on unincumbered and improved real estate worth fifty per cent more than the sum loaned thereon, and providing for the setting apart of a sum not less than two-thirds of the amount of its capital stock as a guaranty fund, to be invested in real estate of the same nature, or in other ways that are not material here. Section 15 provides that no corporation shall issue any guaranty or policy of insurance upon bonds and mortgages, or to owners of real estate and others interested therein, against loss by reason of defective titles and other incumbrances, until the guaranty fund has been set apart and invested. These latter sections relate to the investment of the corporation's own funds, and do not contain a limitation upon a guaranty made by the corporation of any bond and mortgage. While it may seem anomalous to permit a corporation to guarantee bonds and mortgages without restriction, although requiring it to invest its own funds in improved realty, nevertheless we must take the law as it was written.

Section 3 of the act relates to the means of organizing such a corporation, and provides that the incorporators shall execute a certificate which shall set forth:

" 2. Their intention to form a corporation for the purpose of examining titles to real estate, and guaranteeing and insuring the same, and bonds and mortgages as expressed in the first section of this act."

Here there is a clear segregation of the purposes of the corporation, the examination of title to real estate and the guaranteeing and insuring of the same, and then the guaranteeing of bonds and mortgages. If this statute were to be construed in the manner claimed by the appellants, namely, that the power to guarantee bonds and mortgages is limited to the guaranty of title alone, the words in this section " and bonds and mortgages " would be superfluous inasmuch as section 1 speaks of guaranteeing the owners of real estate and others interested therein against loss by reason of defective titles and incumbrances, and certainly a mortgagee would be so considered.

My conclusion with respect to this act is that it permitted a guaranty of bonds and mortgages without limitation, and, in the absence of express limitation, such guaranty must be deemed to relate to a guaranty of payment in accordance with the common acceptance of the scope of that term.

Despite many amendments since enacted, the following saving clause, originally enacted in 1892, has been continuously incorporated in the Insurance Law in substantially the same language, viz. (Insurance Law, § 37):—" Corporations heretofore

formed * * *. Any domestic insurance corporation heretofore incorporated or extended under the provisions of any general or special law of the State is hereby brought under all of the provisions of this chapter relating to such corporation, except that its capital may continue of the amount named in its charter during the existing term thereof, unless it extends its business to other kinds of insurance, and it shall be entitled to all privileges granted by such charter not authorized by this chapter."

It will be observed, as hereinafter set forth, that section 170 of the Insurance Law, which is the successor statute relating to the powers of a corporation to guarantee and which was originally enacted pursuant to the codification of the different laws relating to insurance companies by chapter 690 of the Laws of 1892, comprehends, despite amendments, the exercise of the powers as therein set forth with respect to corporations to be *organized in the future*. The saving clause above set forth deals with the corporations in existence, and when both sections (37 and 170 of the Insurance Law) are read together, it is clear that it was intended thereby to preserve to a corporation in existence all of the powers or "privileges" granted by the charter issued in pursuance of the statutes then existing, despite subsequent amendment. Undoubtedly the Legislature might have required existing corporations to conform to new standards, but it did not do so and, on the contrary, expressly saved "all privileges granted by such charter." It follows that inasmuch as the mortgage company was originally empowered to guarantee payment of bonds secured by mortgages which were liens on unimproved property, it could continue to do so even though subsequent amendments forbade this practice as to corporations created subsequently to their enactment and effect.

But the respondent argues that up to the time of the transaction in question here such amendments did not operate even to preclude corporations thenceforth created from guaranteeing payments of mortgages upon unimproved realty. In my opinion, this contention is correct.

Subdivision 1 of section 170 of the Insurance Law, as enacted by chapter 690 of the Laws of 1892, did not modify in any substantial respect the powers of a corporation to be formed. The absence therein of the comma found in the antecedent subdivision under chapter 538 of the Laws of 1885, between the power to guarantee and insure bonds and mortgages and that of guaranteeing and insuring owners of real property and others interested against defective titles, does not of itself, in my opinion, warrant the conclusion that the pre-existing power to guarantee payment had been repealed.

Whatever ambiguity there may have been in that respect was dissipated by the amendment of subdivision 1 of section 170 of the Insurance Law (Laws of 1904, chap. 543), to read:

" 1. To examine titles to real property and chattels real, to procure and furnish information in relation thereto, make and guarantee the correctness of searches for all instruments, liens or charges affecting the same, guarantee or insure the payment of bonds and mortgages and guarantee and insure the owners of real property and chattels real and others interested therein against the loss by reason of defective titles thereto and other incumbrances thereon which shall be known as a title guaranty corporation."

Thus, the power to guarantee payment was expressly set forth and was acquired then by the mortgage company, even if that company originally had not been so empowered, as I think it had been. Although other provisions of this act of 1904 required a company to invest its own funds, in so far as concerns real property, in property of an improved nature, such requirement is not imposed with respect to its power to guarantee payment of bonds and mortgages.

In my opinion, such a requirement was not incorporated in the Insurance Law until the amendment of 1929, as aforesaid. Subdivision 1 of section 170 was re-enacted substantially in the same form by chapter 302 of the Laws of 1909. But in 1911 this subdivision (Laws of 1911, chap. 525) was amended to read:

" 1. To examine titles to real property and chattels real, to procure and furnish information in relation thereto, make and guarantee the correctness of searches for all instruments, liens or charges affecting the same, guarantee or insure the payment of bonds and mortgages, invest in, purchase and sell, with such guarantee or with guarantee only against loss by reason of defective title or incumbrances, such bonds and mortgages as are lawful investments for insurance companies under this act, and guarantee and insure the owners of real property and chattels real and others interested therein against the loss by reason of defective titles thereto and other incumbrances thereon, which shall be known as a title guarantee corporation."

Here the corporations were limited, in investing, purchasing and selling bonds and mortgages, to those which " are lawful investments for insurance companies under this act." This act, as well as its predecessors, provided for investment in improved real property. The appellants contend that the power to guarantee payment of bonds and mortgages, which is enumerated immediately before the power to " invest in, purchase and sell," is also subject to the

limitation of lawful investments for companies under the act. In my opinion, a fair reading of this subdivision leads to the conclusion that this power was no more subject to such limitation than the preceding powers to examine titles and make searches. The companies had always been subject to restrictions as to the investment of their own funds and, apart from the broadening of such restrictions to include the purchase and sale of bonds and mortgages, this statute did not differ from its predecessors. If the guaranty of bonds and mortgages were to be included within the restriction, it is reasonable to believe that the Legislature would have done so in the manner it adopted in 1929.

The amendment which was in effect in 1925 was enacted by chapter 215 of the Laws of 1913, reading in so far as material as follows:

" § 170. Incorporation. Five or more persons may form a corporation for one of the following purposes:

" 1. To examine titles to real property and chattels real, to procure and furnish information in relation thereto, make and guarantee the correctness of searches for all instruments, liens or charges affecting the same, guarantee or insure the payment of bonds and mortgages, or notes of individuals or partnerships secured by mortgages upon real property situated in this or any other State, and bonds, notes, debentures and other evidences of indebtedness of solvent corporations secured by deed of trust or mortgage upon real property situated in this or any other State, invest in, purchase and sell, with such guarantee or with guarantee only against loss by reason of defective title or incumbrances, bonds and mortgages, and notes of individuals or partnerships secured by mortgages upon improved and unincumbered real property situated in this or any other State worth fifty per centum more than the amount loaned thereon, and bonds, notes, debentures and other evidences of indebtedness of solvent corporations secured by deed of trust or mortgages upon improved and unincumbered real property situated in this State or outside of this State worth fifty per centum more than the amount loaned thereon, and guarantee and insure the owners of real property and chattels real and others interested therein against the loss by reason of defective titles thereto and other incumbrances thereon, which shall be known as a title guaranty corporation."

Here the power to guarantee is broadened to include evidences of indebtedness other than bonds secured by mortgages upon real property, but this power is not restricted as to the character of the real property. Again it is only when we read the power to invest in, purchase and sell " with such guarantee," or otherwise, that we

find a restriction which is now expressly stated to be upon improved and unincumbered real property having an equity of fifty per cent more than the amount loaned.

My conclusions are, *first*, that the mortgage company as originally created was empowered to guarantee payment of bonds secured by mortgages on unimproved real property and that, since that time, this power has been expressly saved to it; and, *second*, that, even if section 37 of the Insurance Law is not efficacious as a saving clause in this respect, there had been no abridgment of this power to guarantee at the time the transaction in question here took place.

In view of the nature of this motion, addressed to the pleadings, I have refrained from including a discussion of the practical construction of the statutes, not only by the corporations affected, but by public authority, which tends, I believe, to uphold the conclusions reached.

I am constrained to disagree with the learned Special Term justice as to the application of the doctrine of estoppel, which he invoked in granting the motion to dismiss, to the effect that, even though the mortgage company did not have the power to guarantee payment, nevertheless the guaranty would be valid, as the mortgage company would be estopped from repudiating it. If the appellants' contentions as to fraud were upheld and it were determined that the guaranty violated the provisions of the Insurance Law, it would seem that appellants would be entitled to rescission. It is no answer to say that the mortgage company is obligated in any event. Even so, the appellants are not precluded from obtaining appropriate relief in an action predicated upon fraud. To hold otherwise would, in my opinion, enable an express statutory prohibition, even though enacted in the public interest, to be circumvented by invoking the doctrine of estoppel, not on behalf of the injured party, but in aid of the wrongdoer.

The order dismissing the first cause of action alleged in the complaint and the judgment entered thereon should be affirmed, with ten dollars costs and disbursements.

LAZANSKY, P. J., and CARSWELL, J., concur; DAVIS and ADEL, JJ., concur in result with memorandum.

DAVIS and ADEL, JJ. (concurring in result). The bond and mortgage company was brought under regulatory statutes subsequent to its incorporation. The amendment to section 170 of the Insurance Law in 1913 is obscure in its provisions. The complaint does not allege in the first cause of action sufficient facts to indicate that that company sold a mortgage with a guaranty

to the defendant which was on unimproved real property; and was, therefore, invalid when sold to plaintiffs by defendant. The plaintiffs should have leave to amend within ten days.

Order dismissing the first cause of action alleged in the complaint, and judgment entered thereon, affirmed, with ten dollars costs and disbursements.