THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN A. DILLIARD and Others, Defendants.*

Court of General Sessions of County of New York, May 24, 1937.

* Affd., 252 App. Div. 125.

*William Copeland Dodge, District Attorney [John T. Cahill, Assistant District Attorney, of counsel], for the plaintiff.*

*Kadel, Van Kirk & Trencher [John Kadel, Emanuel Schwartz, Samuel Silverman and Zangwill Golobe of counsel], for the defendants.*

*Hyman D. Lehrich, for the defendant Louis Gold.*

FRESCHI, J. Leave having been granted the defendants to withdraw the pleas entered on their arraignment, raising the general issue by their plea of not guilty, and to substitute, by consent of the district attorney, a different plea by demurrer, presenting an issue upon the law (Code Crim. Proc. §§ 322, 323; cf. *People* v. *Fuller*, 156 Misc. 404), it now becomes imperative to examine the indictment in the light of the law in order to determine its sufficiency, both as to form and substance — a procedure which the learned district attorney deems desirable so that certain questions now raised under the statute involved may be settled before the county is put to the expense of a protracted trial (*People* v. *Knapp*, 206 N. Y. 373, 377), particularly in view of recent decisions in the Second Department. (*Anderson* v. *Title Guarantee & Trust Co.*, 160 Misc. 881; *Frederici* v. *Title Guarantee & Trust Co.*, 250 App. Div. 432.)

The defendants named in the two counts of the indictment here were directors of the State Title and Mortgage Company, and have been jointly indicted for a violation of the Insurance Law (§§ 173 and 53) and of section 297 of the Penal Law. The first count charges that said directors procured, concurred in and permitted the failure on the part of said corporation *to invest* a sum not less than two-thirds of its total paid-in capital in min mum capital investments, to be known as the " guaranty fund," *and to hold* such funds for the security and payment of losses which may be incurred by reason of the contracts of guaranty or insurance outstanding, between October 5, 1932, and August 2, 1933, although the corporation had between said dates $60,000,000 in contracts of guaranty outstanding.

The second count contains the same factual allegations as the first count and charges that the defendants, well knowing the premises, disregarded the duty imposed upon them by the Insurance Law and did willfully and unlawfully neglect, fail and omit to cause the said corporation *to invest in and hold* such guaranty fund.

There is no allegation contained in the indictment as to the date when said corporation was organized, a though it appears from a bill of particulars filed herein that the State Title and Mortgage Company was organized on March 15, 1927, under the provisions of article 5 of the Insurance Law of the State of New York. The bill of particulars by common consent of the parties is to be treated

as amendatory of the indictment, and to all intents and purposes the facts set forth therein shall be regarded, in deciding the issue raised by the demurrer, as admitted to the same effect as if set out in full in the indictment. Therefore, the demurrers filed are to the indictment and bill of particulars.

It further appears from the bill of particulars that the State Title and Mortgage Company had a total authorized capital stock of $1,000,000, consisting of 10,000 shares of the par value of $100 each, fully paid in on or about May 31, 1927, on which day it commenced business, and had approximate assets in cash, bonds, first mortgages and accrued interest receivable thereon, moneys due it, all told $2,165,650; that the certificate of authority to do business was issued to this company by the Superintendent of Insurance of the State of New York on May 31, 1927, and contained a recital " that not less than two-thirds of the amount of said capital stock has been set apart as a guaranty fund, and the same properly invested as required by statute;" that between May 31, 1927, and April 4, 1929, this company issued contracts of guaranty and insurance; that about September, 1927, the total capital stock of the State Title and Mortgage Company was increased to $6,000,000, consisting of 60,000 shares of the par value of $100 each, and that the total said capital stock, so increased, was fully paid in about September, 1927; that a statement of the approximate amount of assets on January 1, 1928, after the capital stock had been increased, was $7,538,250 in cash, bonds and first mortgages, interest receivable and advanced amortizations; that thereafter on December 29, 1932, and between October 5, 1932, and August 2, 1933, said company owned additional assets totaling $14,118,420, as shown in an itemized schedule attached to the bill of particulars herein, which the People claim were not eligible assets to constitute the guaranty fund and may not be deemed part thereof. During this latter period between December 29, 1932, and August 2, 1933, the People claim that the only assets of this company which were available or qualified for the guaranty fund were approximately $13,750 of first mortgage bonds; and they further claim that the said company did not own any stocks or bonds of the United States or of this State nor any bonds of a county or incorporated city in this State.

The Insurance Law in effect prior to April 4, 1929, provided in section 176 that the capital and funds accumulated in the course of its business of every such title guaranty corporation shall be invested in the same kind of securities as the capital and stock of insurance corporations are required by this chapter to be invested; and that each such corporation shall set apart a sum not less than

two-thirds of the amount of its capital stock as a guaranty fund, and shall invest the sum in the kinds of securities in which it is permitted to invest its capital; and that no such corporation shall issue any guaranty or policy of insurance upon bonds and mortgages or to owners of real property and others interested therein against loss by reason of defective titles or other incumbrances, *until such sum has been so set apart and invested.* This statute further provided that such fund shall be *kept and applied* for the security and payment of losses and expenses which may be incurred by reason of the guaranty or insurance made as aforesaid. Another part of the same section provided that when, on account of losses or otherwise, the amount of the guaranty fund of any such corporation shall fall below such sum as was required to be set apart and invested by this section, no further guaranty or insurance shall be issued until the deficiency below the amount so required has been supplied. At the same time, under section 16 of the Insurance Law, the cash capital of every domestic insurance corporation required to have a capital, to the extent of the minimum capital required by law, *shall be invested and kept invested* in the stocks or bonds of the United States or of thi State, not estimated above their current market value, or in the bonds of a county or incorporated city in this State authorized to be issued by the Legislature, not estimated above their par value or their current market value, or in bonds and mortgages on improved unincumbered real property in this State worth fifty per centum more than the amount loaned thereon.

Section 176 was repealed and superseded by section 173 (Laws of 1929, chap. 290) on April 4, 1929. Among other things provided by the new section (173), title and credit guaranty corporations are required to invest their minimum capital in the same kind of securities as is required for the minimum capital of other insurance corporations; and every such corporation shall invest a sum not less than two-thirds *of its total paid in capital* in minimum capital investments, which investments shall be known as the " guaranty fund," and no such corporation shall issue any guaranty or policy of insurance until such sum has been so invested. Such funds shall be *held* for the security and payment of losses which may be incurred by reason of the contracts of guaranty or insurance outstanding, and shall not be subject to other liabilities of the corporation until after all obligations under its guaranty or insurance contracts have been met.

The demurrer challenges the indictment on the grounds: (1) That it does not contain a concise statement of the acts constituting the crime as required by sections 275 and 276 of the Code of Criminal Procedure; (2) that more than one crime is charged in the

indictment within the meaning of sections 278 and 279 of the Code of Criminal Procedure; (3) that the facts alleged in said indictment do not constitute a crime.

The particular contentions of the defendants are that the indictment is fatally defective because it is grounded in section 173 of the Insurance Law, which did not apply to or bind the State Title and Mortgage Company or its directors; that the facts alleged do not constitute a violation of the Insurance Law; that section 297 of the Penal Law does not apply to the case at bar; and that, inasmuch as the indictment is of doubtful validity, all doubts should be resolved in favor of the defendants.

Doubts as to whether this is a flawless indictment have been indicated on both sides and it has been suggested that it should not be so harbored as to avoid the light of judicial inquiry. Under the circumstances of this case, it should be made the pivot of the trial only after it has received approval as to form and substance and is found to come up to the standards required by law. In doubtful cases of pleading the parties are entitled to protection. The defendants argue that the change in the law concerning the guaranty fund should not affect their company, and yet we must all recognize that this is a changing world and that things as well as institutions and the laws relating to them are ever changing, and, above all, that the primary purpose of the Insurance Law is the protection of the investor, and that the road to security, in that class of cases, lies in the guaranty fund. The historical background of this legislation covers a long period and it explains many of the real reasons for present day legislation.

Under the general rule relating to statutory misdemeanors, it is well settled that setting out of the facts constituting the crime in the words of the statutes, besides an averment as to time, place, person and other circumstances to identify the particular transactions complained of, meets all the requirements. (*People* v. *West*, 106 N. Y. 293, 295; see, also, *People* v. *Farson*, 244 id. 413, 417.) Claim is made, however, by the defendants that the indictment is fatally defective because it is silent as to the issuance of a guaranty or policy of insurance subsequent to the enactment of section 173 (*supra*); and that, therefore, the indictment does not come up to the standard requirements as laid down in *United States* v. *Hess* (124 U. S. 483); *Evans* v. *United States* (153 id. 584); *People* v. *Whitney* (146 App. Div. 98); *People* v. *Albow* (140 N. Y. 130, 134) and *People* v. *Corbalis* (178 id. 516).

The defendants further contend that the statute not only requires the investment of the guaranty fund, but also provides that such guaranty fund, so invested, shall be held for the " payment of

losses which may be incurred by reason of the contracts of guaranty or insurance outstanding; " and they add that under the express provision of the statute, once it has been set up or invested, the guaranty fund may be resorted to, when needed, to pay and discharge obligations arising under the contracts of guaranty or policies of insurance issued by the company.

Both counts of the indictment are predicated upon the alleged violation of the duty which section 173 (*supra*) imposes upon directors of a title and mortgage guaranty corporation, respecting the maintenance of a guaranty fund, although the alleged crime is grounded in different provisions of statutes involved as above stated which make a violation of such duty a misdemeanor. The joinder in one indictment of these offenses is good pleading.

The defendants contend, among other things, that the indictment alleges no crime. It is my opinion that a violation of section 173 requires proof that the corporation not only failed to invest in a guaranty fund but also issued contracts of guaranty before making the investments required by law. These are two complementary and reciprocal elements which enter into the definition of the offenses. These essentials are concisely set forth in the indictment, and the omissions of the directors to maintain a guaranty fund on and after October 5, 1932, as required by section 173 of the Insurance Law, are stated as facts in the indictment.

The conceded facts, however, in the bill of particulars establish that when the certificate of authority to do business was issued to this company by the Superintendent of Insurance on May 31, 1927, a guaranty fund properly invested as required by law had been set apart. This gives rise to the all-important question whether compliance by this corporation with the Insurance Law then in effect makes a successful prosecution under the amended law in 1929 possible. There is a claim by the People that there has been an impairment of the guaranty fund after the commencement of business and that at the time of the indictment the company had available and qualified for the guaranty fund approximately $13,750 of first mortgage bonds and had no " legals " after October 5, 1932; hence the charge that this company had no guaranty fund as provided by the statute of 1929. To meet this, the defendants argue that the requirements of section 173 do not prohibit the issuance of any guaranty or policy of insurance even after the fund originally invested shall have become depleted; and that the deletion of the words of the old statute: " When, on account of losses or otherwise, the amount of the guaranty fund of any such corporation shall fall below such sum as was required to be set apart and invested by this section, no further guaranty or insurance shall be issued until

the deficiency below the amount so required has been supplied," manifests a legislative intent to obviate the necessity of constantly replenishing the fund if the value of the securities depreciated as a result of market fluctuations. The new section (173) also provides for an increase in investments for the guaranty fund where there has been an increase of the capital stock. This of necessity raises the question whether the other provisions of section 173 should be applied to this corporation, and whether the failure to comply therewith is a crime.

The issue raised is novel. The test as to the sufficiency of the indictment depends upon the applicability of the statute of 1929 (Insurance Law, § 173). There is a serious doubt on the points raised here which should be reviewed by a higher court. There are other complicated and related questions affecting the guaranty fund, particularly as to what investments are proper under the circumstances of this case.

I do not believe, as was urged upon the argument, that the court must determine whether section 173 is retroactive. Nothing contained in that section so provides even impliedly. Clearly, it cannot be retrospective in its operation where vested rights under existing laws are impaired, or new obligations are created, or new duties imposed, or any new disability attaches in respect to transactions already past. (*Society for Propagating the Gospel* v. *Wheeler*, 2 Gall. [U. S. Cir. Ct.] 139; see, also, *Sturges* v. *Carter*, 114 U. S. 511, 519, 522.) If it applies to existing corporations, its enforcement may very easily in certain cases force companies out of business. True, there is no provision in the law of 1929 for the creation, within a stipulated time, of a new guaranty fund under it; but I seriously doubt that the Legislature is compelled to make any time allowance, although it has the power to do so, and in many instances has exercised it. If the statute were applicable to this company there should have been an immediate conversion of assets then held as and for the existing guaranty fund, so that a new fund of " legals " would be created and held; and a failure on the part of directors to do so would be the basis for a criminal prosecution for a misdemeanor. It seems to me that " If the Legislature had intended to allow an exemption in such a case, it could and would have expressed that purpose by words not admitting of doubt." (*Sturges* v. *Carter*, supra, p. 522.)

A Legislature has and may exercise certain police powers " to protect the depositors from loss and injury " (*Integrity Mutual Insurance Co.* v. *Boys*, 293 Ill. 307; 127 N. E. 748); and it may enact reasonable, wholesome and necessary laws for the regulation of corporations and for the safety and welfare of the body politic.

No corporation is beyond the reach of the law and exempt from "the watchful care and protection of government." In *Provident Institution for Savings* (63 Mass. 604, 606 [Supp.]) the court said that there can be no question that a savings bank is subject to all general laws of the State passed since the incorporation of the company, relating to its powers and duties and to its investments, where they are consistent with the rights of the institution and do not contravene its chartered rights in "the accomplishment of their appropriate business."

The act of 1929 was passed to clarify the investment section of the Insurance Law (See N. Y. Ins. Report [1929], part 1, pp. 18–20), and required, under section 173, a new form of guaranty fund, quite different from the investments under section 176, which provided for a guaranty fund made up by investing two-thirds of its total paid-in capital instead of two-thirds of its capital stock to be held for "payment of losses which may be incurred by reason of the contracts of guaranty or insurance outstanding." It was a radical change in the laws as to the form of investments for the establishment of a guaranty fund. Unquestionably, the old fund could be resorted to, whenever necessary, to discharge by payment obligations under such contracts. Section 16 of the Insurance Law made provision as to the proper form of investments by insurance companies. These last two sections should be read together.

The learned district attorney in his brief makes the following statements:

"The requirement in section 176 that the guaranty fund shall be 'set apart' was left out. Instead of the language 'Such fund shall be *kept* and applied for the security and payment of losses,' the new section provided: 'Such fund shall be *held* for the security and payment of losses.'

"There was deleted the provision of the old law which required that no contracts of guaranty be issued while the guaranty fund was impaired.

"When this company was incorporated the only provision of the Insurance Law with respect to the maintenance of a guaranty fund by title and guaranty companies was section 176 of the Insurance Law (L. 1909, ch. 33). The language of this section is somewhat different from section 173 of the Insurance Law, which was enacted by chapter 290 of the Laws of 1929. The indictment is based on a violation of the latter section.

"There is some basis for the proposition urged by counsel for these defendants that in the absence of reference to corporations organized theretofore a statute should be construed as not applying to the existing rights and privileges of previously existing corporations."

Furthermore, the district attorney states that " the Attorney-General has interpreted section 173 of the Insurance Law as not applying to corporations formed prior to its enactment, relying on the rule of statutory construction just mentioned (Opinions of Attorney-General [1934], p. 474), although conceding that the words ' every such corporation ' used in section 173 are so general and broad as in their literal sense to comprehend existing cases. Of course, note must also be taken of the fact that the Legislature in enacting sections 170 and 171 of the Insurance Law made specific provisions for their application to corporations theretofore organized, as it likewise did in enacting section 80 of the Insurance Law with respect to the deposit of securities of life insurance corporations theretofore formed, from which it may be argued that the Legislature in omitting specific reference to existing corporations in section 173 intended to exempt them from its provisions.

" It would seem to be the better view that section 173 of the Insurance Law, being an amendment of the general laws pursuant to which the State Title and Mortgage Company was formed, operated as an amendment of its charter.

" Even though the language of the statute does not in terms amend a charter, yet, where such appears to have been the legislative intent, the statute will be regarded as an amendment. Section 5 of the General Corporation Law provides: ' The charter of every corporation shall be subject to alteration, suspension and repeal, in the discretion of the Legislature.' (See, also, Gen. Constr. Law, § 95, and Insurance Law, § 37.)

" It is submitted, therefore, in view of the rule of construction enunciated by section 95 of the General Construction Law and inasmuch as section 173 referred to ' *every such corporation*,' that it was intended as an amendment of the charters of all existing title and guaranty corporations including State Title and Mortgage Company.

" There is still a third ground for holding that section 173 of the Insurance Law is applicable to State Title and Mortgage Company. Section 37 of the Insurance Law provides that a domestic insurance corporation heretofore incorporated or extended under the provisions of any general or special law of the State ' *is hereby brought under all of the provisions of this chapter* relating to such corporation, except that its capital may continue of the amount named in its charter during the existing term thereof, unless it extends its business to other kinds of insurance, and it shall be entitled to all privileges granted by such charter not authorized by this chapter.'

" There can be no question that section 37 of the Insurance Law indicates a clear legislative intent to establish a uniform body of insurance law applicable alike to all corporations formed under the Insurance Law.

" The question arises as to the effect of the exception mentioned in the latter part of section 37, as follows: ' except that its capital may continue of the amount *named in its charter* * * * and it shall be entitled to all privileges granted by *such charter* not authorized by this chapter.'

" Under the exception last mentioned, is State Title and Mortgage Company entitled to take advantage of the guaranty fund provisions of the old section 176 on the theory that section 176 was part of the body of the Insurance Law and therefore part of its ' charter ' at the time that it was incorporated in 1927? "

The only way in which these questions can be settled so far as the law is concerned, is by the review of an order sustaining the demurrer here, thus avoiding a protracted trial necessarily involving much effort and expense. A definitive and final adjudication of the relevant and governing law of the case is sought by both sides, and I quite agree with counsel that the indictment which here charges twelve defendants, directors and officers of the State Title and Mortgage Company, with failing to maintain a guaranty fund, relates in fact to transactions running into tens of millions of dollars; and that a case of this kind would require between four and eight weeks to try, and months of preparation in advance of trial. It involves the evaluation of assets such as mortgages on real estate, bonds, stocks and other similar assets, and also will involve of necessity the tracing of all expenditures and disbursements made by the company in order to determine whether or not the payments made were properly made in connection with any losses on outstanding contracts of guaranty and insurance. It will of necessity impose a great burden and expense not only on the defendants, individually and collectively, but on the State as well. (See *People* v. *Knapp,* 147 App. Div. 436.)

Demurrer sustained.